*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-BG-777

IN RE LAURENCE F. JOHNSON, RESPONDENT.

FILED 05/04/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 934398)

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-307-09 and BDN-453-12)

(Argued April 6, 2017                                     Decided May 4, 2017)

*Justin M. Flint* for respondent.

*William R. Ross*, Assistant Disciplinary Counsel, with whom *Wallace E. Shipp, Jr.*, Disciplinary Counsel, *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, and *Jelani C. Lowery*, Senior Staff Attorney, were on the brief, for the Office of Disciplinary Counsel.

Before BECKWITH and EASTERLY, *Associate Judges*, and STEADMAN, *Senior Judge*.

STEADMAN, *Senior Judge*:  Respondent, Laurence F. Johnson, was charged

by Disciplinary Counsel with multiple violations of the Maryland Lawyers' Rules

of Professional Conduct (MLRPC).[1] Respondent is an experienced immigration attorney and the violations in question stem from two separate immigration matters. On appeal, respondent claims that the Board on Professional Responsibility (1) misapplied D.C. Bar Rule XI, § 11 (c) in recommending independent discipline in a matter for which respondent had already been disciplined by the Attorney Grievance Commission of Maryland (AGCM), and (2) recommended an unwarranted sanction for his misconduct, which was greater than that recommended by the Ad Hoc Hearing Committee. We accept the Board's recommendation.

## I. Facts and Proceedings

The first matter involved respondent's representation of Carlina Seminiano. Respondent entered into a retainer agreement with Ms. Seminiano in April 2001 for the purpose of helping her obtain legal permanent residence in the United States, a process which included labor certification. Ms. Seminiano paid respondent approximately $2000 upon signing the retainer agreement. Her delayed

---

[1] A lawyer admitted to our bar may be disciplined here for conduct occurring in another jurisdiction, and in appropriate cases, as here, subject to discipline here based on the ethics rules of the other jurisdiction. District of Columbia Rules of Professional Conduct 8.5 (a), (b).

labor certification was re-opened in August 2007 and respondent failed to meet a filing deadline, essential to the labor certification, in November 2007. On February 25, 2008, respondent sent a letter to Ms. Seminiano and her employer indicating that her labor certification application was closed and offered to start a new application "at a large discount." Respondent did not return the $2000 to Ms. Seminiano until June 2012, after an investigation into respondent's conduct had begun.

The second matter involved respondent's representation of Secundo Jacinto Jerez Minchala after he was ordered removed from the United States in 2011. Mr. Minchala retained respondent's services to appeal from this removal order, which had a filing deadline of June 2, 2011, and paid respondent a total of $2060 through various monthly payments between May and October 2011. Respondent never filed the appeal. Respondent also deposited the advanced legal fees into his office's operating account without informed written consent from Mr. Minchala.

Respondent wrote Mr. Minchala a letter on June 23, 2011, intending to terminate his representation. Despite this letter, respondent's office continued to bill Mr. Minchala, and respondent did not inform Mr. Minchala that he failed to file an appeal until February 28, 2012, at which time respondent also refunded Mr.

Minchala $2000. Once Mr. Minchala retained new counsel, respondent refused to provide a letter stating that he failed to file an appeal, believing it would harm his own interests. Respondent refunded the final $60 in March 2014 after the initial Specification of Charges was filed in this case. The AGCM reprimanded respondent for misconduct related to his representation of Mr. Minchala, acknowledging that he violated MLRPC Rules 1.1, 1.3, and 8.4 (d). This jurisdiction's charges went beyond the Maryland reprimand and alleged additional MLRPC violations.

The Ad Hoc Hearing Committee determined that respondent warranted *Kersey* mitigation for the period of misconduct associated with Ms. Seminiano, but not the misconduct associated with Mr. Minchala.[2] The Hearing Committee concluded that while representing Ms. Seminiano, respondent violated MLRPC Rules 1.1 (competence) and 1.3 (diligence). While representing Mr. Minchala, the Committee found that respondent violated Rules 1.1, 1.3, 1.4 (keeping the client

---

[2] Respondent asserted that any discipline should be mitigated due to disability according to *In re Kersey*, 520 A.2d 321 (D.C. 1987). In 2004, respondent developed a skin condition that made it difficult to concentrate and led to fatigue and depression. The Hearing Committee concluded that this condition contributed to respondent's misconduct in 2007. Around the time of respondent's second offense he exhibited symptoms of depression, but the Hearing Committee concluded that respondent's "ability to represent Mr. Minchala was *not* impaired to the point that Respondent was unable to comply with the ethical requirements of practicing law." (emphasis in original).

reasonably informed of the status of the matter), 1.8 (h)(1) (making an agreement with the client prospectively limiting the lawyer's liability to the client for malpractice), 1.15 (a) (holding the client's funds in a separate account), 1.15 (c) (failure to deposit fees into a client trust account), 1.16 (d) (properly protecting the client's interests on termination of the representation), 8.4 (c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4 (d) (conduct that seriously interferes with the administration of justice). Ultimately, the Hearing Committee recommended a suspension of thirty days, with the entire suspension stayed in favor of a two-year period of probation.

Respondent filed a general notice of exceptions to the Hearing Committee Report that indicated he intended to later file detailed exceptions, and Disciplinary Counsel filed a notice of some specific exceptions. However, subsequently they jointly withdrew all exceptions to the Report and Recommendation of the Ad Hoc Hearing Committee and proceeded on review to the Board on Professional Responsibility without briefing or argument. On review, the Board adopted the Hearing Committee's report except its conclusions as to the recommended length of suspension. Instead, the Board recommended a suspension of ninety days, with sixty days stayed in favor of one year of probation.

## II. D.C. Bar Rule XI, § 11 (c)

Respondent first argues that the disciplinary matter related to his actions representing Mr. Minchala should be dismissed because the AGCM has already reprimanded respondent for the misconduct.  His argument rests on subsection (c) of D.C. Bar Rule XI, § 11 (*Reciprocal Discipline*) that reads as follows:

> Reciprocal discipline . . . . shall not be imposed for sanctions by a disciplining court such as public censure or reprimand that do not include suspension or probation. For sanctions by another disciplining court that do not include suspension or probation, the Court shall order publication of the fact of that discipline by appropriate means in this jurisdiction.

Pursuant to this provision, respondent asserts, the only permissible course of action under our rules relating to the Minchala incident was to publish in the District the fact of the Maryland reprimand.

The Hearing Committee heard this argument and rejected it.  Respondent took no exception to this conclusion before the Board but, as already stated, let the Hearing Committee report be submitted to the Board without briefing or

argument.[3]  "We have consistently held that an attorney who fails to present a point to the Board waives that point and cannot be heard to raise it for the first time here." *In re Green*, 136 A.3d 699, 700 (D.C. 2016) (quoting *In re Holdmann*, 834 A.2d 887, 889 (D.C. 2003)).  While we re-emphasize that arguments to this court should ordinarily be presented to the Board to ensure proper appellate review, in this case the Board explicitly acknowledged the existence of the issue and concurred with the Hearing Committee's rejection of the argument.  In this posture, and to put the question to rest, we have determined to address the tardy argument.

We are in no way persuaded by respondent's argument.  Section 11 of D.C. Bar Rule XI sets forth the procedures to be followed where a sanction is to be imposed in the District based upon disciplinary action in another jurisdiction.  It does not affect the broad power of Disciplinary Counsel to institute fresh proceedings against an attorney based on the same conduct.  *See* D.C. Bar R. XI, § 6 (a)(2) ("Disciplinary Counsel shall have the power and duty . . . [t]o investigate all matters involving alleged misconduct by an attorney subject to the disciplinary

---

[3]  Board on Professional Responsibility Rule 13.5 states that "[i]f no notice of exceptions is filed within the time allotted, the rights of the parties to brief and argue before the Board shall be waived, and the Board shall take action based on the record."

jurisdiction of this Court which may come to the attention of Disciplinary Counsel or the Board from any source whatsoever, where the apparent facts, if true, may warrant discipline."); *see also In re Fitzgerald*, 982 A.2d 743, 744 (D.C. 2009) (acknowledging the option of the Board on Professional Responsibility to either impose reciprocal discipline or proceed *de novo*); *In re Greenspan*, 910 A.2d 324, 343 (D.C. 2006) (acknowledging that Disciplinary Counsel may elect to proceed with an original disciplinary action, despite the greater burden it must bear in doing so); *In re Perrin*, 663 A.2d 517, 523 (D.C. 1995) ("[W]e are not prepared to construe Section 11 (c) as requiring us to permit foreign discipline to trump the results of an exhaustive original disciplinary proceeding[] here."). While these cases preceded the streamlining of the procedures for dealing with reciprocal discipline introduced by the 2008 amendments of that section, there is no indication of any intent to narrow the long-recognized power to bring an independent proceeding. Thus, Disciplinary Counsel operated well within its authority in proceeding with original discipline in the matter of Mr. Minchala.

## III. Recommended Sanction

Respondent also argues that the recommended discipline by the Board was unwarranted, especially given that the Hearing Committee did not recommend a period of active suspension. It is the Board, however, that has the ultimate responsibility to make its recommendation to this court. "This court reviews the Board's legal conclusions *de novo*." *In re White*, 11 A.3d 1226, 1228 (D.C. 2011). We also "retain[] the ultimate choice of sanction," *In re Scanio*, 919 A.2d 1137, 1142 (D.C. 2007) (internal quotation marks omitted), but, by our own rules, we will accept the Board's recommendations "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9 (h)(1). This standard dictates that "if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Scanio*, 919 A.2d at 1142.

In deciding the nature and length of disciplinary sanctions, the Hearing Committee and Board consider numerous factors:

> (1) the seriousness of the conduct at issue; (2) the prejudice, if any, to the client which resulted from the conduct; (3) whether the conduct involved dishonesty and/or misrepresentation; (4) the presence or absence of violations of other provisions of the disciplinary rules[;]

> (5) whether the attorney had a previous disciplinary history; (6) whether or not the attorney acknowledged his or her wrongful conduct; and (7) circumstances in mitigation of the misconduct.

*In re Cole*, 967 A.2d 1264, 1267 (D.C. 2009) (quoting *In re Thyden*, 877 A.2d 129, 144 (D.C. 2005)).

The Board departed from the Hearing Committee's recommendation of a thirty-day suspension, stayed in favor of two years of probation, emphasizing that respondent's misconduct involving Mr. Minchala "was serious—involving dishonesty, commingling and interference with the administration of justice, in addition to neglect."[4] Moreover, the matter involving Mr. Minchala did not warrant *Kersey* mitigation and was respondent's second offense. The Board concluded that "[w]hen examining other cases to determine the appropriate sanction here, the range of sanctions for comparable misconduct supports the imposition of a 90-day suspension."[5]

---

[4] The Board retains the ability to "affirm, modify, or expand the findings and recommendation of the Hearing Committee." Board on Professional Responsibility Rule 13.7.

[5] The Board also, without explanation, reduced the probationary period from two years to one. No objection is made to that modification of the Hearing Committee's recommendation.

Respondent argues that almost none of the cases cited by the Board are appropriately similar to the case at hand, except for *In re Cole*, 967 A.2d 1264 (D.C. 2009). In *Cole*, the attorney received a thirty-day suspension for violating Rules 1.1 (a) and (b); 1.3 (a), (b), and (c); 1.4 (a) and (b); and 8.4 (c) and (d) stemming from one immigration matter. 967 A.2d at 1265 n.3, 1266, 1270. The attorney failed to file an asylum application and then lied to his client about the application's status. *Id.* at 1265. While the attorney's actions constituted serious misconduct, the Board agreed to a thirty-day suspension because "he had no prior misconduct, displayed a high level of contrition, sought to mitigate the consequences of his action, and presented two favorable character witnesses." *Id.* at 1266 (internal quotation marks omitted). This case is distinguishable from *Cole* on key factors, as Disciplinary Counsel correctly points out. While respondent presented several favorable character witnesses, respondent's course of misconduct stemmed from two separate immigration matters; his acknowledgement of his misconduct was, as the Hearing Committee noted, "at best, equivocal"; he did not cooperate with Mr. Minchala's subsequent counsel out of self-interest; and he violated additional rules (Rules 1.8 (h)(1), 1.15 (a) and (c), and 1.16 (d)).

The Board compared this case to others where similar sentences were imposed, such as *In re Perez*, 828 A.2d 206 (D.C. 2003). In *Perez*, this court

followed the recommendation of the Board, suspending an attorney for sixty days for "protracted neglect and intentional conduct that resulted in prejudice and damage to a vulnerable client," where the Hearing Committee had initially recommended a thirty-day suspension. 828 A.2d at 206 & n.1. Sanctions for violations of somewhat similar groupings of rules in other cases have ranged from a forty-five-day suspension,[6] to a four-month suspension,[7] to yet other ranges of suspensions with partial stays in favor of probation.[8]

---

[6] *E.g.*, *In re Fox*, 35 A.3d 441, 441-42 (D.C. 2012) (imposing a forty-five day suspension, on an already-suspended attorney, for violations of Rules 1.1 (a) and (b), 1.3 (a) and (c), and 1.4 (a) and (b) where the attorney failed to keep a client informed of her claim, failed to file a lawsuit on her behalf, and misinformed her of the status of her case).

[7] *E.g.*, *In re Schoeneman*, 891 A.2d 279, 280, 283 (D.C. 2006) (imposing a four-month suspension for violations of Rules 1.1 (a), 1.3 (a) and (b), 1.4 (a), 8.4 (c) and (d), and 1.16 (d), in neglecting three employment discrimination matters in federal court).

[8] *E.g.*, *In re Askew,* 96 A.3d 52, 53-54, 62 (D.C. 2014) (imposing a six-month suspension with all but sixty days stayed for violations of Rules 1.1 (a) and (b), 1.3 (a), 1.4 (a) and (b), 1.16 (d), 3.4 (c), and 8.4 (d) where the attorney "intentional[ly] and virtually complete[ly] neglect[ed] . . . her court-appointed client"); *In re Thai*, 987 A.2d 428, 429-31 (D.C. 2009) (imposing a suspension of sixty days with thirty days stayed in favor of one year of probation for violations of Rules 1.1 (a) and (b), 1.3 (a) and (c), 1.4 (a), and 1.16 (d) in representing a client in an immigration matter).

In determining an appropriate sanction, all cases turn on the totality of circumstances that are presented, and no two cases will be exactly alike. We conclude that the judgment of the Board as to an appropriate sanction is reasonable and within the ambit of prior cases. Accordingly, we adopt the Board's recommendation, and it is hereby

ORDERED that Laurence F. Johnson is suspended from the practice of law in the District of Columbia for a period of ninety (90) days, with sixty (60) days stayed in favor of one year of probation subject to the conditions outlined by the Board on Professional Responsibility.[9]

---

[9] The Board on Professional Responsibility set forth the following unchallenged conditions on respondent's probation:

> (1) During the first six months of the probationary period, Respondent shall take at least six hours of continuing legal education coursework preapproved by Disciplinary Counsel that include the proper drafting of client retainer agreements, the proper handling of retainers and advance payment of fees by clients, and the proper operation of attorney escrow accounts containing such retainers and fees. Respondent shall provide Disciplinary Counsel with proof of attendance at such continuing legal education within 30 days after attendance at the approved course.

> (2) At the end of each successive 90-day period following the start of probation, Respondent shall file an affidavit with the Board and Disciplinary Counsel stating

(continued…)

that he believes he is fully capable both physically and mentally to continue practicing law, which affidavit shall be supported by one or more letters from a physician or physicians of Respondent's choice, dated within the 30 days prior to the date of Respondent's affidavit, stating that s/he has examined Respondent and finds that Respondent is fully capable both physically and/or mentally to continue practicing law; *provided*, if either Respondent or the examining physician(s) shall believe Respondent has any physical or mental condition that may affect Respondent's continuing practice of law, the affidavit/supporting letter shall describe such condition in reasonable detail.

(3) Respondent shall execute an authorization form waiving any physician-patient or similar privilege to the extent necessary to permit the physician(s) to release information to the Board and/or Disciplinary Counsel, and/or to testify at a hearing regarding Respondent's disability and compliance with the terms of probation and fitness to practice law, as provided by Board Rule 18.1.

(4) Respondent shall not be required to notify clients of the probation.

(5) During the probationary period, the Board shall retain jurisdiction to require any additional action or proceeding regarding Respondent in light of information the Board receives pursuant to condition (2) and/or condition (3) specified above.

(6) Should Respondent violate the terms of his probation or commit any additional violation of the MLRPC or the District of Columbia Rules of Professional Conduct, he will be subject to revocation of his probation.

(continued…)

*So ordered.*

_____

(…continued)

In addition, as the Board recommends pursuant to Board Rule 18.1 (a), respondent must accept the terms of probation within thirty days of the date of the court's order by filing a statement with the Board on a form prepared by the Board's Executive Attorney or countersigning the Board order implementing the probation.  If respondent does not file this statement with the Board, the full period of suspension will take effect without further order from the court.