*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-BG-700

IN RE CATHERINE E. ABBEY, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 436925)

On Report and Recommendation
Of the Board on Professional Responsibility
(BDN-370-12)

(Argued April 14, 2017                    Decided September 21, 2017)

(Amended October 19, 2017[*])

*Abraham C. Blitzer* for respondent.

*H. Clay Smith, III*, Assistant Disciplinary Counsel, with whom *Wallace E. Shipp, Jr.*, Disciplinary Counsel at the time the brief was filed, *Jennifer P. Lyman* and *Julia L. Porter*, Senior Assistant Disciplinary Counsel, were on the brief, for the Office of Disciplinary Counsel.

---

[*] The amended opinion (1) corrects a typographical error on page 2, changing "Rule 1.15 (b)" to "Rule 1.15 (c),"; (2) adding a new footnote to read "This court temporarily suspended Ms. Abbey on October 4, 2016" and (3) corrects the effective date of Ms. Abbey's disbarment (on the last line of the opinion) from "effective thirty days from the date of this opinion" to reflect immediate disbarment and the fact that "the period of reinstatement will run *nunc pro tunc* to November 14, 2016, the date on which she filed the affidavit required by D.C. Bar R. XI, § 14 (g)."

2

Before BECKWITH and EASTERLY, *Associate Judges*, and REID, *Senior Judge.*

REID, *Senior Judge*:   In its Report and Recommendation, dated July 12, 2016, the Board on Professional Responsibility has recommended that respondent, Catherine E. Abbey, be disbarred from the practice of law in the District of Columbia because of clear and convincing evidence that she (1) engaged in reckless misappropriation of entrusted funds, in violation of Rule 1.15 (a) of the District of Columbia Rules of Professional Conduct, and (2) failed to promptly notify and/or deliver the funds to the third parties entitled to receive them, in violation of Rule 1.15 (c).[1]   Ms. Abbey's main argument on appeal is that her misappropriation constituted negligent, rather than reckless, misappropriation and the sanction should be a six-month suspension. For the reasons stated below, we accept the recommendation of the Board.

---

[1]  This court temporarily suspended Ms. Abbey on October 4, 2016.

**FACTUAL SUMMARY**

During these proceedings, Disciplinary Counsel,[2] an Assistant Disciplinary Counsel, Ms. Abbey, and her attorney agreed to factual stipulations, including the following. Ms. Abbey was admitted by motion to the Bar of this court in 1993. Sometime around May 2010, Guy Vouffo was injured in an automobile accident, and he retained Ms. Abbey to represent him in a personal injury lawsuit. During Ms. Abbey's representation, Mr. Vouffo executed an assignment of insurance benefits to Medtaris Rehabilitation and also signed a separate document authorizing direct payment to Medtaris Rehabilitation. Ms. Abbey executed a related document "agree[ing] to follow the aforementioned authorization and direction of my client to pay Medtaris Rehabilitation any sums due and owing from the proceeds of any settlement, judgment or insurance payments." Mr. Vouffo signed two additional medical authorizations addressed to Doctor's Community Hospital, and to Kaiser Permanente. Each of these authorizations stated: "I hereby direct and authorize [Ms. Abbey] to pay all unpaid medical and hospital bills

---

[2] While the disciplinary proceedings against Ms. Abbey were in progress, this court changed the name of Bar Counsel to Disciplinary Counsel, effective December 19, 2015. We use Disciplinary Counsel throughout this opinion.

presented to her before the distribution of any proceeds to me out of any sums of money received by her to which I may be entitled."

The stipulations of fact also indicated that the Liberty Mutual Insurance Company issued a check on December 28, 2011, in the amount of $12,500, payable to Ms. Abbey and Mr. Vouffo. Ms. Abbey deposited the check in her IOLTA account.[3] In January 2012, Ms. Abbey prepared a settlement distribution sheet, showing that she withheld $4,498.83 for Mr. Vouffo's medical providers (after Medtaris Rehabilitation agreed to reduce its bill to $2,700, and Ms. Abbey agreed to reduce her fee to $3,803.86). In January 2012, she sent a check totaling $4,003.81 to Mr. Vouffo. She did not issue checks to Medtaris Rehabilitation (in the amount of $2,700) or Kaiser Permanente (in the amount of $866.44) until November 14, 2012. The remaining $932.39 (of the amount withheld for medical providers) was never distributed. On numerous occasions, between January 5, 2012, and November 1, 2012, the balance in Ms. Abbey's IOLTA account fell

---

[3] Rule 1.15 of the District of Columbia Rules of Professional Conduct concerns the safekeeping of property. The rule requires all attorneys to keep funds earmarked for clients or third persons separate from an attorney's own funds. Client and third party funds must be placed in a trust account, an "approved depository," known as an IOLTA account. Moreover, upon receiving client or third person funds, an attorney must promptly notify and promptly deliver the funds to the client and third persons. Rule 1.15 (a), (b), and (c).

below the $4,498.83 that she should have retained for all of Mr. Vouffo's medical providers. By November 1, 2012, the balance, in her IOLTA account, stood at $621.26.

Based on additional evidence presented by Disciplinary Counsel, Hearing Committee No. 7 of the Board found that under the settlement distribution sheet, which Mr. Vouffo and Ms. Abbey had signed on January 10, 2012, the $4,498.83 reserved for medical providers was to be distributed as follows: $2,700 to Medtaris Rehabilitation, $625 to Kaiser Permanente,[4] $607.83 to Doctors Community Hospital, $487 to Doctors Emergency Physicians, and $79 to Diagnostic Imaging. Despite the settlement distribution agreement, Medtaris Rehabilitation made multiple requests to Ms. Abbey for payment from February 23, 2012 through August 9, 2012; in a letter dated July 12, 2012, Medtaris Rehabilitation's representative, Mark Pappas, detailed his efforts to collect payment from Ms. Abbey and advised her that he would file a Bar complaint. Ms. Abbey continued to withhold payment to Medtaris Rehabilitation, and on October 3, 2012, Mr. Pappas filed a complaint with Disciplinary Counsel. Nevertheless,

---

[4] Kaiser agreed to settle its bill for $866.44 in mid-November 2012.

Ms. Abbey did not turn over the entrusted funds to Medtaris Rehabilitation until November 14, 2012, the date on which she also paid Kaiser Permanente.

In addition, Hearing Committee No. 7 found that Ms. Abbey withdrew funds from her IOLTA account before paying all of Mr. Vouffo's medical providers. On March 22, 2012, she made a $2,000 cash withdrawal from her IOLTA account. On November 9, 2012, she made another $2,000 cash withdrawal from the same account, even though she "was aware of her responsibility to pay all of Mr. Vouffo's medical providers."

In its Report and Recommendation, dated July 12, 2016, the Board adopted and incorporated by reference the Hearing Committee Report of March 29, 2016. The Board agreed with the Hearing Committee that there was clear and convincing evidence that Ms. Abbey acted recklessly, rather than negligently, in misappropriating entrusted funds. Consequently, in accordance with this court's case law, the Board recommended that Ms. Abbey be disbarred.

## STANDARD OF REVIEW

D.C. Bar Rule XI § 9 (h)(1) provides that "the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record. . . ." Similarly, "[t]he Board . . . is required to accept the factual findings of the hearing committee that are supported by substantial evidence in the record, viewed in its entirety." *In re Samad*, 51 A.3d 486, 495 (D.C. 2012). Just as "the Board owes no deference to the hearing committee's determination of ultimate facts, which are really conclusions of law," "[t]his court reviews the Board's legal conclusions *de novo*." *Id*.

## ANALYSIS

### *The Waiver Issue*

Disciplinary Counsel argues that "[b]y failing to take exception to the Hearing Committee Report and Recommendation and failing to file a brief to the Board, [Ms. Abbey] waived her right to litigate her issues on appeal before the [c]ourt." During oral argument in this court, Ms. Abbey's appellate counsel

indicated that he was retained after the Board proceedings, but that he regarded waiver to be a question of ultimate fact. The Board stated in its Report and Recommendation that "Disciplinary Counsel took no exception to the Report and Recommendation of the Hearing Committee," but that "[o]n April 7, 2016, [Ms. Abbey] filed a Notice of Exceptions to the Hearing Committee Report and Recommendation." The Board further indicated that "no briefs were filed with the Board and there was no oral argument; [therefore under Board Rule 13.4 (a)], the Board will decide the matter on the available record."[5]

The waiver issue presents a question of law, and our review is de novo. *In re Samad*, *supra*, 51 A.3d at 495. Our analysis is guided by the following legal principles. Because "[o]ur consideration of Board findings and recommendations is similar to our review of administrative agency decisions[,] . . . we do not address objections that could have been, but were not raised prior to judicial review." *In re James*, 452 A.2d 163, 169 (D.C. 1982). In *In re James*, we recognized that "Respondent could have objected to the lack of notice during the proceedings

---

[5] Rule 13.4 (a) of the Rules of the Board on Professional Responsibility provides in pertinent part: "A party failing to file a brief with the Board waives the right to oral argument and the Board will decide the matter based on the available record."

before the Hearing Committee, or at any time thereafter." *Id*. at 168. In *In re Holdmann*, 834 A.2d 887, 889 (D.C. 2003), a reciprocal discipline case, we cited several cases, including *In re James*, in declaring that "we have consistently held that an attorney who fails to present a point to the Board waives that point and cannot be heard to raise it for the first time here." *In re Holdmann*, *supra*, 834 A.2d at 889.

Later, in *In re Hargrove*, 155 A.3d 375 (D.C. 2017), we agreed with Disciplinary Counsel that respondent had "forfeited" her appellate contentions because she "had numerous opportunities to challenge the allegations against her and to object to any procedural errors, but she failed to properly do so"—for example, she "did not timely file an answer to the specification of charges," "did not appear either at a pre-hearing conference or at the hearing before the Hearing Committee," and did not "file notice of exceptions to the Hearing Committee's findings and recommendations." *Id*. at 376. Furthermore, in *In re Johnson*, 158 A.3d 913 (D.C. 2017), we observed that the Hearing Committee heard an argument that respondent made on appeal, and the respondent took no exception to the Hearing Committee's conclusion but "let the Hearing Committee report be submitted to the Board without briefing or argument." *Id*. at 917. We stated that

"[w]hile we re-emphasize that arguments to this court should ordinarily be presented to the Board to ensure proper appellate review, in this case the Board explicitly acknowledged the existence of the issue and concurred with the Hearing Committee's rejection of the argument"; we further said that "[i]n this posture, and to put the question to rest, we have determined to address the tardy argument." *Id*.

Here, Ms. Abbey participated in the disciplinary proceedings against her. In her answer to the specification of the charges, she denied the violation of Rules 1.15 (a) and (b), as alleged in the specification of charges. She (1) testified before the Hearing Committee, (2) filed "proposed finding[s] of fact[] and conclusions of law," in which she conceded misappropriation but stated that her misappropriation was not intentional, reckless, or willful, but that it was negligent, and (3) filed a notice of exceptions to the Hearing Committee Report and Recommendation. Hence, under *In re James*, *supra*, and *In re Hargrove*, *supra*, she clearly raised her objection to the type of misappropriation ruling Disciplinary Counsel sought before the Board—intentional, reckless or willful as opposed to negligent—"prior to judicial review." *In re James*, *supra*, 452 A.2d at 169; *In re Hargrove*, *supra*, 155 A.3d at 376. Moreover, as in *In re Johnson*, *supra*, the Board "explicitly acknowledged the existence of the [type of misappropriation] issue and concurred

with the Hearing Committee's rejection of [Ms. Abbey's] argument" that her misappropriation was negligent instead of reckless.  158 A.3d at 917.   Indeed, as we have previously indicated, the Board specifically declared that it would "decide the matter on the available record."[6]  Thus, as we asserted in *In re James*, "even when the complaining party does not get satisfaction from the administrative [here the disciplinary] body, the appellate court's task is facilitated by the record of the agency's [here the Board's] attention to the issue."  452 A.2d at 169.  In short, we are convinced that Ms. Abbey raised the misappropriation issue she presents in this court before the Board, prior to judicial review, and she has not waived her argument on that issue, even though she waived oral argument before the Board. The Board determined that it was able to decide the misappropriation issue on the basis of the record Disciplinary Counsel and Ms. Abbey made before the Hearing Committee, and her arguments in this court are consistent with her arguments before the Hearing Committee.  Hence, like the Board, we proceed to consider the merits of the misappropriation issue.

---

[6] Significantly, the Board invoked its Rule 13.4 (a) regarding waiver only of the right to oral argument before the Board, and did not and could not have relied on its Rule 13.5 (because Ms. Abbey noticed exception to the Hearing Committee's Report); the Rule specifies that "[i]f no notice of exceptions is filed within the time allotted, the rights of the parties to brief and argue before the Board shall be waived, and the Board shall take action on the record."

*The Misappropriation Issue*

In her appellate brief, Ms. Abbey argues "that by holding funds aside in her non-trust accounts so as to protect the recipients of the entrusted funds indicates that [she] demonstrated concern for the safety and welfare of entrusted funds, which is the 'central issue in determining whether misappropriation is reckless.'" She claims that she "never had an overdraft," and "[a]lthough she admittedly had deficits in managing her escrow account, she had fashioned a system that assure[s] that the entrusted funds would be paid to the appropriate parties." She insists that while there was misappropriation, it "was negligent rather than reckless[,]" and "that the typical sanction for negligent misappropriation is six month suspension."

Disciplinary Counsel essentially argues that under this court's case law and based upon the Hearing Committee's findings in this case, the Board correctly concluded that Ms. Abbey's misappropriation was reckless rather than negligent. Specifically, Disciplinary Counsel contends that "[i]n practice, [Ms. Abbey] did not differentiate entrusted from non-entrusted funds." Rather, "she treated all funds in her possession as her own, which ultimately led to her reckless misappropriation of the third-party healthcare provider[s'] funds." In addition,

Disciplinary Counsel emphasizes (1) the Hearing Committee's finding about Ms. Abbey's "failure to reconcile her trust account records and reliance on end-of-the-year accounting that never identified amounts relating to each individual client"; and (2) the "clear and convincing evidence" that Ms. Abbey "disregarded inquiries" from Medtaris Rehabilitation about her lack of payment, and her knowing failure to pay Medtaris while "allow[ing] the balance in her trust account repeatedly to fall below the amount due to Medtaris."

"[W]e are faced with a legal question, which we review *de novo*," because "whether any misappropriation resulted from more than simple negligence [is a] question[] of law concerning ultimate facts." *In re Berryman*, 764 A.2d 760, 766 (D.C. 2000) (citing *In re Utley*, 698 A.2d 446, 449 (D.C. 1997)) (internal quotation marks omitted). This court's legal principles concerning misappropriation are well established. Misappropriation is "any unauthorized use of client's funds entrusted to [the lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Anderson*, 778 A.2d 330, 335 (D.C. 2001) (internal quotation marks and citation omitted). "Misappropriation happens when the balance in [the

attorney's] trust account falls below the amount due the client." *In re Ahaghotu*, 75 A.3d 251, 256 (D.C. 2013) (internal quotation marks and citation omitted).

> Reckless misappropriation reveal[s] an unacceptable disregard for the safety and welfare of entrusted funds, and its hallmarks include: the indiscriminate commingling of entrusted and personal funds; a complete failure to track settlement proceeds; the total disregard of the status of accounts into which entrusted funds were placed, resulting in a repeated overdraft condition; the indiscriminate movement of monies between accounts; and finally the disregard of inquiries concerning the status of funds.

*Id*. at 256 (internal quotation marks and citation omitted). "The severity of the sanction for misappropriation depends on whether the misappropriation was (1) intentional or reckless, or (2) merely negligent." *Id*. (citing *In re Anderson*, *supra*, 778 A.2d at 338). "[I]n virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *In re Berryman*, *supra*, 764 A.2d at 769 (citing *In re Addams*, 579 A.2d 190, 199 (D.C. 1990)).

Negligent misappropriation is an attorney's non-intentional, non-deliberate, non-reckless misuse of entrusted funds or an attorney's non-intentional, non-

deliberate, non-reckless failure to retain the proper balance of entrusted funds. Its hallmarks include a good-faith, genuine, or sincere but erroneous belief that entrusted funds have properly been paid; and an honest or inadvertent but mistaken belief that entrusted funds have been properly safeguarded. *See In re Choroszej*, 624 A.2d 434, 435-37 (D.C. 1992) (Board found that attorney representing client in claim for personal injury "genuinely believed that he had paid [a doctor]," had not done so but paid the doctor upon discovery of error; Board concluded that attorney's conduct was inadvertent and negligent); *In re Ray*, 675 A.2d 1381, 1387 (D.C. 1996) (Hearing Committee found no "clear and convincing evidence that [the respondent] deliberately or recklessly attempted to deprive estate of its funds" by taking his legal fee without a court order); *In re Reed*, 679 A.2d 506, 507-08 (D.C. 1996) (Board found failure of attorney to pay a client's doctor's bill was "inadvertent"—attorney believed she had paid the bill but upon discovery of no record of payment, attorney mailed payment to doctor); *In re Chang*, 694 A.2d 877 (D.C. 1997) (attorney mistakenly believed that funds in escrow account were sufficient to pay property taxes for which no funds had yet been received; attorney paid the dishonored checks upon discovery of his mistake).

Here, the Hearing Committee's findings (adopted and incorporated by the Board), based upon clear and convincing evidence, do not support Ms. Abbey's argument that her behavior amounted to negligent rather than reckless misappropriation. Nor does our case law suggest that Ms. Abbey's conduct was simply negligent. The Hearing Committee found that Ms. Abbey received the insurance settlement check from Liberty Mutual in January 2012; properly deposited the check in her IOLTA account; and properly prepared and signed (along with Mr. Vouffo) a settlement distribution sheet in January 2012, showing the amount withheld for payment to Mr. Vouffo's medical providers. Nevertheless, she made a cash withdrawal of $2,000 from her IOLTA account on March 22, 2012, and another cash withdrawal from the same account on November 9, 2012, despite being "aware of her responsibility to pay all of Mr. Vouffo's medical providers."

The Hearing Committee also determined that one of Mr. Vouffo's medical providers, Medtaris Rehabilitation (through its representative, Mr. Pappas), agreed to reduce Medtaris's bill from $5,200 to $2,700 after speaking with Ms. Abbey on January 9, 2012. When Medtaris did not receive the medical fee, Mr. Pappas sent communications to Ms. Abbey, making multiple requests for payment from

February 23, 2012, through August 9, 2012. Even when Medtaris's representative notified Ms. Abbey in a letter of July 12, 2012, that he would file a Bar complaint if Medtaris was not paid the reduced fee on which they had reached agreement, Ms. Abbey still did not pay the bill. Nor had she paid Medtaris's fee by October 3, 2012, the date on which Medtaris filed its Bar complaint; in fact, she did not pay the fee until November 14, 2012. In addition, the record contains no proof that Ms. Abbey has paid all of Mr. Vouffo's medical providers, including Doctor's Community Hospital, Doctor's Emergency Physicians, and Diagnostic Imaging."[7]

In addition, the Board determined that Ms. Abbey "did not reconcile her IOLTA records during the time she held Mr. Vouffo's funds in trust and she did not keep a ledger." She also "failed to track settlement proceeds relating to individual clients."

---

[7] During her December 1, 2015, testimony before the Hearing Committee, Ms. Abbey responded to the inquiry from a member of the Hearing Committee relating to payment of these medical providers. She stated that she "tried to pay [Doctor's Community Hospital]" before attending the hearing, "but they've not responded, so [the bill] has not been paid." She asserted that she received no response from Doctor's Emergency Physicians, but that she "[thought Diagnostic Imaging] has been paid off." Ms. Abbey acknowledged that she did not have any documents showing payment.

18

The aforementioned findings of the Hearing Committee and the Board do not reveal a good-faith, genuine, or sincere but erroneous belief that entrusted funds were properly safeguarded and paid, or that Ms. Abbey's failure to pay Mr. Vouffo's medical bills in a timely manner was inadvertent or due to an honest mistake. Thus, Ms. Abbey is not in the same position as the respondents in *In re Choroszej*, *supra*, *In re Reed*, *supra*, and *In re Chang*, *supra*.

Nor can Ms. Abbey succeed in her effort to align her conduct with that of the respondent in *In re Anderson*, *supra*, a case on which Ms. Abbey relies that also involved a personal injury settlement and alleged violations of Rule 1.15 (a) and (b). There, the attorney mistakenly thought he had paid the client's medical provider. This court concluded that "[Disciplinary] Counsel failed to prove by clear and convincing evidence a pattern of conduct by [the respondent] manifesting a reckless disregard of his duty to safeguard [entrusted] funds." 778 A.2d at 339. Although Mr. Anderson's record-keeping system was rudimentary and flawed, we stated that "our decisions . . . have rejected the proposition that recklessness can be shown by inadequate record-keeping alone combined with commingling and misappropriation." *Id*. at 340 (citation omitted). We also said that respondent's "fail[ure] to pay a single client obligation is not evidence that he flagrantly

disregarded the integrity of third-party funds"; respondent "did not indiscriminately write checks on the operating account, and he did not write checks that were dishonored or that caused the account to be in overdraft." *Id.* Moreover, "the record [did] not support the finding that respondent ignored post-settlement inquiries by [his client] . . . ." *Id.* at 341.

Unlike the respondent in *In re Anderson*, Ms. Abbey repeatedly ignored inquiries from Medtaris Rehabilitation about payment of its reduced bill, and failed to pay all of Mr. Vouffo's medical providers, while making $4,000 in unexplained cash withdrawals from the entrusted funds and allowing the balance of entrusted funds to fall below the level needed to pay the medical providers.[8] Ms. Abbey made a conscious decision not to make a sharp distinction between entrusted funds and non-entrusted funds, and as the Hearing Committee and the Board concluded, she made no effort to reconcile her trust account records, depending instead on an

---

[8] During her December 1, 2015, testimony before the Hearing Committee, Ms. Abbey admitted on cross-examination that if she had written a $2,700 check to Medtaris Rehabilitation between September 7 and 24, or October 9 through the end of October, or on November 1, 2012, the bank would have dishonored the check. When asked by her counsel whether the $2,000 cash withdrawal she made on November 9, 2012, went to her office account, Ms. Abbey replied, "I don't know."

annual accounting that did not pinpoint what amounts were identified with each of her clients.

Ms. Abbey's reliance on *In re Burton*, 472 A.2d 831 (D.C. 1984); *In re Pels*, 653 A.2d 388 (D.C. 1995), and *In re Ahaghotu*, *supra*, does not advance her effort to convince this court that her misappropriation was negligent rather than reckless. She relies on these cases in arguing that she "never had an overdraft." In doing so, she lifts up only one of the hallmarks of reckless misappropriation identified by *In re Anderson*—"total disregard of the status of accounts into which entrusted funds are placed, resulting in a repeated overdraft condition." 778 A.2d at 338. *In re Burton*, a case resulting in disbarment, involved two disciplinary matters and violations different from those in Ms. Abbey's case—failure to deposit client funds in a separate account, and dishonesty, fraud, deceit or misrepresentation, 472 A.2d at 831. That case does not compel a conclusion here that Ms. Abbey's misappropriation was negligent rather than reckless. In *In re Burton*, this court, issued a short order disbarring the respondent; the order incorporated the Board's Report and Recommendation which recognized that (1) the hearing committee "expressly reject[ed] respondent's contention that in making unauthorized withdrawals he violated no ethical prescription because he always 'maintained

sufficient funds to satisfy the requirement of the trust,'" and (2) "even if respondent did have sufficient cash on hand to cover the shortages, it would not excuse . . . his unauthorized use of trust funds." 472 A.2d at 838. What the Board said in *In re Burton* is applicable to Ms. Abbey's situation.

*In re Pels*, a case also resulting in disbarment, concerned a situation similar to the instant case—a personal injury client, violations of Rules 1.15 (a) and (c), failure to immediately pay the client's medical providers, and a trust account that fell below the level needed to pay medical providers. *See* 653 A.2d at 389. Both the hearing committee and the Board concluded that respondent Pels' misappropriation was reckless, in part because of overdrafts, but also because, as is true in Ms. Abbey's case, (1) his "conduct . . . was marked by a pervasive failure to maintain contemporaneous records accounting for the flow or disposition of client funds. . ."; and (2) "besides the *per se* act of misappropriating funds needed to pay the client's bills, respondent failed to account for or deliver" the remaining funds to the client. 653 A.2d at 396. Furthermore, this court "reject[ed] respondent's argument that his objective good faith—his reasonable but erroneous belief that he was entitled to the balance of the funds—reduced his culpability to simple negligence." *Id*. at 397.

*In re Ahaghotu*, *supra*, involved violations of several rules of professional conduct, including Rule 1.15 (a) and (b); the respondent was disbarred. 75 A.3d at 253. Similar to Ms. Abbey, Mr. Ahaghotu admitted misappropriation but argued that it was negligent. Like Ms. Abbey, he received entrusted funds designed in part to cover the fees of his client's medical providers. He deposited the funds in his trust account and was aware that he owed money to a medical provider; however, prior to paying the medical provider, the funds in his trust account fell below the amount needed to pay the provider. 75 A.3d at 253-54. Like Ms. Abbey, the respondent "did not closely reconcile his records and bank statements" and ignored problems with his trust account. *Id*. at 254. This court concluded that the respondent "exhibited an 'unacceptable level of disregard for the safety and welfare of entrusted funds' – that is, 'a conscious indifference to the consequences of his behavior for the security of the funds.'" *Id*. at 253 (citing *In re Anderson*, *supra*, 778 A.2d at 339).

When we apply the legal principles embedded in our misappropriation case law to Ms. Abbey's conduct, the record before us lacks clear and convincing evidence to support a conclusion of inadvertence or honest mistake, or a good faith belief that the funds entrusted to her were being handled properly. Rather, the

record before us contains clear and convincing evidence that Ms. Abbey's misappropriation was deliberate and reckless. Ms. Abbey (1) was clearly aware that she owed entrusted funds to Mr. Vouffo's medical providers; (2) failed to reconcile her trust account, examine the status of the trust account on a regular basis, or institute an accounting system that enabled her to determine what funds were allocated to what client or what medical provider and the status of those funds; (3) ignored repeated inquiries about and request for the agreed upon reduced medical fee by one of Mr. Vouffo's medical providers; (4) made two $2,000 (total $4,000) unexplained cash withdrawals from her trust account prior to paying some of Mr. Vouffo's medical providers, leaving insufficient funds, for months, to pay medical providers; and (5) apparently has not yet paid all of the medical providers from the funds entrusted to her care. *See In re Anderson*, *supra*; *In re Ahaghotu*, *supra*.

Finally, on this record we must impose the sanction of disbarment. In *In re Addams*, *supra*, this court "reaffirm[ed] that in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence"; this court also declared that it "shall regard a lesser sanction as appropriate only in

extraordinary circumstances." *Id*. at 191. Furthermore, D.C. Bar R. XI, § 9 (g) provides in pertinent part that this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." We discern no danger of an inconsistent disposition, and no "extraordinary circumstances" in this case. Consequently, we adopt the recommended sanction of disbarment. *See In re Ahaghotu*, *supra*, 75 A.3d at 258-59; *In re Pels*, *supra*, 653 A.2d at 397-98.

Accordingly, for the foregoing reasons, it is ORDERED that respondent Catherine E. Abbey is immediately disbarred from the practice of law in the District of Columbia. For purposes of reinstatement, the period of disbarment will run *nunc pro tunc* to November 14, 2016, the date on which she filed the affidavit required by D.C. Bar R. XI, § 14 (g).

*So ordered*.