*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-BG-0581

IN RE STEVEN VILLARREAL, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 482284)

On Report and Recommendation
of the Board on Professional Responsibility

(BDN: 23-BD-032; DDN: 2019-D299)

(Argued February 12, 2025                    Decided July 17, 2025)

*Steven Villarreal*, pro se.

*Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, *Julia L. Porter*, Deputy Disciplinary Counsel, and *Caroll Donayre*, Assistant Disciplinary Counsel, were on the brief, for the Office of Disciplinary Counsel.

*Marie L. Park*, Assistant Executive Attorney, with whom *James T. Phalen*, Executive Attorney, was on the brief, for the Board on Professional Responsibility.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

PER CURIAM: The Board on Professional Responsibility has determined that respondent Steven Villarreal violated the District of Columbia Rules of Professional Conduct and has recommended that Mr. Villarreal receive a thirty-day suspension,

stayed upon the condition of one year of unsupervised probation and the completion of required continuing legal education (CLE).  No one contests the Board's findings of rule violations and the Board's recommendation of a thirty-day suspension.  We conclude that the record supports the Board's findings of violations and the Board's recommendation of a thirty-day suspension, and we adopt those findings and that recommendation.  *See In re Viehe*, 762 A.2d 542, 543 (D.C. 2000) (per curiam) ("When, as here, there are no exceptions to the Board's report and recommendation, our deferential standard of review becomes even more deferential."); D.C. Bar R. XI, § 9(h)(2) ("[I]f no exceptions are filed to the Board's report, the [c]ourt will enter an order imposing the discipline recommended by the Board . . . ."); *In re Stephens*, 247 A.3d 698, 701 (D.C. 2021) (D.C. Bar R. XI, § 9(h)(2) "is not absolute—we would not impose discipline that is clearly against the law or the public interest, for example, merely because no party took exception to it . . . .").

The Office of Disciplinary Counsel (ODC) does take exception to the Board's recommendation that the period of suspension be stayed.  We adopt the Board's recommendation that the period of suspension be stayed.

## I. Factual and Procedural Background

ODC charged Mr. Villarreal with violating the Rules of Professional Conduct by failing to provide competent representation to his client and to serve his client with skill and care, in violation of D.C. R. Pro. Conduct 1.1 (a) and (b); failure to represent his client zealously and diligently, in violation of D.C. R. Pro. Conduct 1.3(a); and failure to act with reasonable promptness, in violation of D.C. R. Pro. Conduct 1.3(c).

## A. The Hearing Committee's Report and Recommendation

After an evidentiary hearing, the Hearing Committee made findings and conclusions that included the following.

Adriana Hernandez entered the United States without inspection in 1988, and her mother—who was a lawful permanent resident—filed a Petition for Alien Relative (Form I-130) on Ms. Hernandez's behalf. That same year, an immigration judge entered an order of removal for Ms. Hernandez. The petition filed by Ms. Hernandez's mother was denied in 2007.

Approximately twelve years later, Ms. Hernandez sought to reopen the removal proceedings in order to adjust her immigration status under Section 245(i) of the Immigration and Naturalization Act, codified at 8 U.S.C. § 1255(i).

Section 245(i) permits immigrants who entered the United States without inspection to adjust their status to that of a lawfully admitted permanent resident under certain conditions. As relevant to Ms. Hernandez, to qualify for this status change, an individual must provide documentary evidence showing that: (1) the individual is physically present within the United States, including on December 21, 2000; (2) the individual entered the United States without inspection; and (3) the individual is the beneficiary of an immigrant visa petition, such as a Form I-130, filed on or before April 30, 2001, that was complete and legally valid when filed.

Ms. Hernandez hired Mr. Villarreal to assist her with this matter. Mr. Villarreal filed a motion to reopen Ms. Hernandez's case but failed to ask Ms. Hernandez for appropriate documentation, including evidence of Ms. Hernandez's mother's citizenship or lawful-permanent-resident status, a copy of the Form I-130 filed by her mother, or evidence showing Ms. Hernandez was physically present within the United States. An expert testified at the evidentiary hearing that these materials should have been collected and filed with the motion. Additionally, Mr. Villarreal was aware that he needed to demonstrate that the Form I-130 was "approvable" at the time of filing in the motion to reopen.

Mr. Villareal submitted the motion to reopen without appropriate documentation. An immigration judge denied the motion to reopen because it lacked

required documentation. Ms. Hernandez asked Mr. Villarreal to explain why the motion was denied, but Mr. Villarreal did not explain why the motion was denied or take responsibility for not supporting the motion with the necessary documentation. Instead, Mr. Villarreal requested that Ms. Hernandez gather the required documentation at that point and retain him so he could file another motion. Ms. Hernandez declined and ended the representation. Ms. Hernandez obtained new counsel and, at the time of the Hearing Committee's report, was awaiting her green card.

The Hearing Committee concluded that ODC had proven violations of D.C. R. Pro. Conduct 1.1(a) and 1.1(b) because Mr. Villarreal did not ask Ms. Hernandez for sufficient documentation to support the motion to reopen and should have inquired what documentation was needed to support the motion if he was unaware. The Hearing Committee also concluded that ODC had proven a violation of D.C. R. Pro. Conduct 1.3(a) because Mr. Villarreal failed to gather the necessary documents to support the motion despite having ample time to do so. The Hearing Committee concluded, however, that ODC had not proven a violation of D.C. R. Pro. Conduct 1.3(c) because there was not clear and convincing evidence that Mr. Villarreal acted with unreasonable delay.

On the issue of sanction, the Hearing Committee found that Mr. Villarreal failed to appear before the Hearing Committee or to engage with ODC, which demonstrated an unwillingness to accept responsibility or show remorse. The Hearing Committee noted, however, that this was Mr. Villarreal's first disciplinary infraction and the matter did not involve fraudulent conduct or dishonesty. Accordingly, the Hearing Committee recommended that Mr. Villarreal be suspended for thirty days, stayed in favor of one-year probation with an eight-hour CLE requirement.

## B. The Board's Report and Recommendation

ODC filed an exception to the Hearing Committee's Report and Recommendation, arguing solely that Mr. Villarreal was not eligible for a stay because he did not participate in the hearing before the Hearing Committee and had not shown remorse. Mr. Villarreal responded that his absence from the hearing—which he notified ODC of beforehand because he did not want to represent himself and could not afford an attorney—was already considered as an aggravating factor that increased his sanction from an informal admonition to a stayed suspension.

The Board adopted the Hearing Committee's findings of fact and agreed with the Hearing Committee's conclusions regarding the Rule violations. On the issue of

sanction, the Board agreed with the Hearing Committee and recommended that Mr. Villarreal receive a thirty-day suspension, stayed in favor of one year of unsupervised probation with conditions. In reaching this recommendation, the Board agreed with the Hearing Committee that Mr. Villarreal's conduct was less serious than other cases where respondents received thirty-day suspensions with no stay. The Board further agreed that this case could be distinguished from similar cases where respondents received non-suspensory sanctions because Mr. Villarreal's "failure to appear at the hearing marks an unwillingness to acknowledge error or demonstrate remorse." The Board concluded that Mr. Villarreal's "clean disciplinary slate" and responsiveness to ODC's inquiry letter and requests for documents were mitigating factors that warranted a sanction between the two extremes, which is why the Board agreed that a stay should be imposed.

## II. Analysis

ODC argues that the court should not adopt the Board's recommendation that the suspension be stayed. We adopt the Board's recommendation on that point.

### A. Standard of Review

In determining what sanction to impose for violations of the Rules of Professional Conduct, this court "shall adopt the recommended disposition of the

Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). "[A] sanction recommendation from the Board comes to us with a strong presumption in favor of its imposition." *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam) (internal quotation marks omitted). "In general, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *Id.* (internal quotation marks omitted). "Ultimately, however, the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court." *Id.* (internal quotation marks omitted).

## B. *In re Dobbie*

ODC argues that this court announced a restrictive approach to stayed suspensions in *In re Dobbie*, 305 A.3d 780 (D.C. 2023). We disagree that *In re Dobbie* established a new standard governing stayed suspensions.

In *In re Dobbie*, the respondents were charged with disciplinary violations for failing to turn over exculpatory information to the defense in violation of the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963). 305 A.3d at 787. After determining that the respondents had violated various Rules of Professional Conduct, *see id.* at 793-810, the court considered what sanction to impose, *id.* at

810-15. The court adopted the Board's recommended six-month suspension but independently determined that a stay of that suspension in favor of a one-year term of probation was warranted. *Id.* at 810-11. In determining the appropriate sanction, the court balanced "seven non-exhaustive factors" and concluded that, while the six-month suspension "reflect[ed] the gravity of the violation," a stay was warranted because "the deficient conduct of respondents' supervisors" was a mitigating factor suggesting that the respondents "should not, and probably do not, shoulder full responsibility" for the violations. *Id.* at 811, 812, 814. In reaching that conclusion, the court briefly summarized our prior cases that discussed stays, stating that "[s]tays of suspension are typically reserved for situations where attorneys commit clearly sanctionable conduct, but under circumstances that explain or blunt their culpability." *Id.* at 814-15 (citing cases).

ODC focuses on the *In re Dobbie* court's observation that, in our prior cases, stays had been "typically reserved" for situations in which circumstances "explain[ed] or blunt[ed]" the respondent's culpability. 305 A.3d at 814. According to ODC, that observation "established a clear and valuable standard for when stayed suspensions are appropriate in attorney discipline cases." We disagree. The statement at issue was simply an observation about when stays had "typically" been imposed in our prior cases. *In re Dobbie* did not purport to establish a new and

restrictive approach to determining when stays are appropriate. Rather, the court followed our well-established approach to sanctions, which looks at the "totality of circumstances" to determine whether the sanction recommended by the Board "is reasonable and within the ambit of prior cases." *In re Johnson*, 158 A.3d 913, 919 (D.C. 2017). That approach is consistent with the dispositions of past disciplinary cases in which a stay was imposed. *See, e.g.*, *In re Rachal*, 251 A.3d 1038, 1043-44 (D.C. 2021) (per curiam) (imposing stayed suspension because mitigating factors and lack of improper motive "support[] a more lenient sanction"); *In re Chapman*, 962 A.2d 922, 924-27 (D.C. 2009) (per curiam) (balancing factors with aggravating circumstances to impose sixty-day suspension with thirty days stayed).

Accordingly, we hold that *In re Dobbie* did not establish a new standard to determine whether a stay is warranted.

### C. Whether a Stay Is Appropriate

Thus, the issue before us is whether the Board's recommendation of a stay "falls within a wide range of acceptable outcomes." *In re Baber*, 106 A.3d at 1076 (internal quotation marks omitted). We adopt the Board's recommendation.

In assessing whether to adopt the Board's recommendation, we consider the totality of the circumstances. *In re Johnson*, 158 A.3d at 919. Some relevant factors include:

> (1) the seriousness of the conduct at issue; (2) the prejudice, if any, to the client which resulted from the conduct; (3) whether the conduct involved dishonesty and/or misrepresentation; (4) the presence or absence of violations of other provisions of the disciplinary rules; (5) whether the attorney had a previous disciplinary history; (6) whether or not the attorney acknowledged his or her wrongful conduct; and (7) circumstances in mitigation of the misconduct.

*Id.* at 918 (brackets and internal quotation marks omitted). We also look to similar cases to try to ensure that disciplinary sanctions are not inconsistent. *See In re Dobbie*, 305 A.3d at 813 (comparing sanction with similar cases "to avoid inconsistent dispositions") (internal quotation marks omitted).

We conclude that a stayed thirty-day suspension is an appropriate sanction in this case. Mr. Villarreal's misconduct was serious and prejudiced his client. On the other side of the ledger, Mr. Villarreal's conduct did not involve dishonesty, and Mr. Villareal has no prior disciplinary history. *See, e.g., In re Martin*, 67 A.3d 1032, 1055 (D.C. 2013) (noting lack of disciplinary history as mitigating factor). Further, although Mr. Villarreal did not appear at the disciplinary hearing, the Board reasonably took into account that Mr. Villareal otherwise cooperated with ODC's

investigation and provided a reason for his absence. Based on the totality of the circumstances, we cannot say there is a reason to depart from the "strong presumption in favor of" the Board's recommended sanction. *Id.* at 1053 (internal quotation marks omitted).

Further, the sanction recommended by the Board is appropriate when compared with other cases involving similar conduct. Mr. Villarreal's actions were more serious than similar cases in which we imposed a non-suspensory sanction. *See, e.g.*, *In re Shelnutt*, 719 A.2d 96, 97 (D.C. 1998) (per curiam) (public censure for attorney with no history of discipline who failed to adequately represent client in bond-review hearing); *In re Hill*, 619 A.2d 936, 937-38 (D.C. 1993) (per curiam) (public censure for failing to file brief and respond to repeated orders in criminal appeal and failing to cooperate with disciplinary investigation). Mr. Villarreal's conduct was less serious, however, than other cases involving similar conduct in which we imposed an unstayed thirty-day suspension. *See, e.g.*, *In re Cole*, 967 A.2d 1264, 1265, 1270 (D.C. 2009) (thirty-day suspension for failing to file an immigration application, lying to client, and withholding important information); *In re Bernstein*, 707 A.2d 371, 372, 375-77 (D.C. 1998) (thirty-day suspension for failing to take action on case for over three years, to properly inform client, and to turn over papers at conclusion of representation).

Accordingly, respondent Steven Villarreal is hereby suspended from the practice of law for thirty days, stayed in favor of one year of unsupervised probation with the following conditions:

(1) During the first six months of the probationary period, Mr. Villarreal shall complete eight hours of CLE (with at least two hours on ethics) preapproved by ODC;

(2) No later than fourteen days after completing the CLE requirement, Mr. Villarreal shall certify his compliance to ODC;

(3) Mr. Villarreal shall not be required to notify clients of the probation; and

(4) Should Mr. Villarreal violate the terms of his probation, he may be subject to revocation of his probation.

*So ordered.*