*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 21-BG-743

IN RE BRYAN A. CHAPMAN, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 439184)

On Report and Recommendation
of the Board on Professional Responsibility
(Bar Docket No. 2014-D269)
(Board Docket No. 20-BD-034)

Argued September 20, 2022                    Decided October 27, 2022

*Bryan A. Chapman*, pro se.

*Myles V. Lynk*, Senior Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, was on the brief, for the Office of Disciplinary Counsel.

Before DEAHL and ALIKHAN, *Associate Judges*, and FISHER, *Senior Judge*.

ALIKHAN, *Associate Judge*: Relying on a report and recommendation from one of its Hearing Committees, the District of Columbia Board on Professional Responsibility determined that respondent, Bryan A. Chapman, had violated numerous Maryland Rules of Professional Conduct and recommended that he receive a 90-day suspension. We conclude that, because he failed to take any

exceptions to the Hearing Committee's report when the matter was before the Board, Mr. Chapman has forfeited his challenges in this court. Thus, we have no reason to question the Board's determination that Mr. Chapman violated several Maryland Rules of Professional Conduct, and we agree with the Board that a 90-day suspension is appropriate.[1]

## I.    Factual Background

Mr. Chapman has been a licensed attorney in the District of Columbia since 1993, primarily practicing in the field of employment discrimination law. In October 2010, he began representing Myrna Roberts, a mathematics teacher at Crossland High School, a school within Prince George's County Public Schools ("PGCPS").

Ms. Roberts, who was born in the U.S. Virgin Islands, believed that she was being treated unfairly by the principal of Crossland High School, Charles Thomas. In spring 2008, Mr. Thomas had reassigned Ms. Roberts from her full-time teaching

---

[1] This court applies the Maryland rules because the conduct giving rise to the disciplinary proceeding occurred in a Maryland federal court. D.C. R. Pro. Conduct 8.5(b)(1) ("For conduct in connection with a matter pending before a tribunal, the rules to be applied shall be the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise . . . ."). And because Mr. Chapman is a member of the District of Columbia Bar, he is subject to the District's disciplinary authorities. *Id.* 8.5(a) ("A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs.").

position to a co-teaching position, meaning that she no longer had her own classroom or a consistent schedule. Over the course of the next few months, Ms. Roberts complained about the change in position to PGCPS officials and to her union, the Prince George's County Educators' Association, but her complaints were strictly contractual in nature.

Separately, in September 2010, Mr. Chapman began representing a group of current and former teachers from Largo High School, also a part of PGCPS. That suit primarily alleged racial discrimination by Largo's principal, Angelique Simpson-Marcus, who is Black, against Jon Everhart, a white teacher, and those who defended him.

In October 2010, Ms. Roberts learned of the Largo suit through an acquaintance and contacted Mr. Chapman to determine whether she, too, had a valid employment discrimination claim. After two meetings, Mr. Chapman agreed to represent her. While Mr. Chapman explained to Ms. Roberts that she did not have a viable race discrimination claim, he stated that she *did* have a viable claim for national origin discrimination under Title VII. Mr. Chapman did not, however, explain that her claim (which was based on conduct that had occurred several years

earlier) was subject to an administrative exhaustion requirement and might be time-barred.[2]

In November 2010, Mr. Chapman filed a joint complaint against PGCPS in the United States District Court for the District of Maryland on behalf of Ms. Roberts and the Largo plaintiffs. Ms. Roberts's portion of the complaint only alleged national origin discrimination under Title VII and 42 U.S.C. § 1981. PGCPS moved to dismiss in January 2011, arguing, *inter alia*, that Ms. Roberts and several other plaintiffs had failed to exhaust their administrative remedies by timely filing complaints with the EEOC.

Immediately after PGCPS filed its motion, Mr. Chapman instructed Ms. Roberts to submit a claim to the EEOC "as soon as [she could]," despite knowing that she had missed the statutory deadline by several years. When Ms. Roberts requested assistance in submitting her EEOC complaint, Mr. Chapman sent her sample complaints he had filed on behalf of prior clients. Ms. Roberts

---

[2] Before filing a civil suit under Title VII, a plaintiff must first exhaust her administrative remedies by submitting a complaint to the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged violation. If the plaintiff first seeks relief through a local or state agency, the deadline is extended to 300 days after the alleged violation. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e-5(e)(1).").

eventually filed her EEOC complaint in March 2011, and she received her right-to-sue letter one week later.

In April 2011, the district court dismissed the joint complaint without prejudice, permitting each plaintiff to file an individual complaint. Despite the dismissal, Mr. Chapman continued to tell Ms. Roberts that she had a strong case.

In May 2011, Mr. Chapman filed Ms. Roberts's individual complaint in district court, alleging (1) national origin discrimination by PGCPS in violation of Title VII; (2) national origin discrimination by PGCPS in violation of Title VI; and (3) national origin discrimination by Ms. Roberts's union in violation of 42 U.S.C. § 1981. The defendants filed motions to dismiss, and after a hearing, the district court dismissed all claims with prejudice. In dismissing the claims, the court observed that the Title VII claim remained time-barred; that the Title VI claim lacked any allegations of intentional discrimination; and that national origin discrimination was not actionable under section 1981. The court expressed its frustration with Mr. Chapman and how he had handled the matter, stating: "I think you've really encouraged some of your clients to come forth with lawsuits that have no basis . . . ."

## II. Procedural History

After her suit was dismissed, Ms. Roberts submitted a complaint to the Office of Disciplinary Counsel. Mr. Chapman and Disciplinary Counsel then exchanged several letters regarding the alleged misconduct over the next few years. In February 2020, after completing its preliminary investigation, Disciplinary Counsel served Mr. Chapman with a specification of charges alleging that he had violated Maryland Rules of Professional Conduct 19-301.1 (competence), 19-301.2(a) (consultation with a client), 19-301.4(b) (explaining a matter to a client), and 19-303.1 (filing frivolous claims) in his representation of Ms. Roberts.

Mr. Chapman submitted an answer denying the charges in April 2020, and both parties presented evidence and arguments before a Hearing Committee in October 2020. The Committee heard testimony from Mr. Chapman, Ms. Roberts, and Ms. Linda Correia, Disciplinary Counsel's expert in employment discrimination law. After the hearing concluded, both parties submitted post-hearing briefs. Mr. Chapman notably did not brief the issue of sanctions. Instead, he accepted a number of Disciplinary Counsel's findings of fact, proposed additional findings of fact without citing to the record (contrary to the Hearing Committee's instructions), and requested dismissal of all charges.

In August 2021, the Hearing Committee issued its report and recommendation, finding that Disciplinary Counsel had proved each of the charged rule violations by clear and convincing evidence. The Hearing Committee also found the testimonies of Ms. Roberts and Ms. Correia to be credible, but determined that Mr. Chapman's testimony lacked credibility. The Hearing Committee recommended a 90-day suspension.

After the Hearing Committee submitted its report to the Board, the parties had 10 days to take exceptions to its findings of fact and conclusions of law. Disciplinary Counsel timely indicated that it had no exceptions; however, Mr. Chapman never filed anything with the Board. With no exceptions to consider, the Board issued a two-page report and recommendation adopting the Committee's report in full after determining that it was supported by substantial evidence in the record. We now consider the Board's report and recommendation.[3]

---

[3] While Mr. Chapman did not lodge exceptions before the Board, he filed a document called "Exceptions" in this court in February 2022—over three months after the Board issued its report and recommendation. That document, which is 66 pages long and strikingly similar to his appellate brief, does not take exception to any fact or conclusion in the Board's report and recommendation (or the Hearing Committee's, for that matter) beyond saying that it is "arbitrary and capricious because it disregards the facts and the applicable laws."

### III.    The Disciplinary Process

Before beginning our analysis, we summarize the typical process for attorney discipline.  When the Office of Disciplinary Counsel receives a complaint regarding a District-barred attorney's conduct, it opens an investigation.  *See* D.C. Bar R. XI, § 8(a).  Depending on the results of the investigation, Disciplinary Counsel may choose to initiate formal disciplinary proceedings against the respondent attorney by filing a petition with the Executive Attorney of the Board and delivering a specification of charges to the respondent.  *Id.* § 8(b)-(c).  If disciplinary proceedings are initiated, the respondent must respond within 20 days or risk defaulting on the charges.  *Id.* § 8(e)-(f).  Disciplinary Counsel and the respondent then present their evidence and arguments before a Hearing Committee.  *See id.* § 8(i).  Within 120 days of the hearing's conclusion, the Hearing Committee submits its report and recommendation to the Board on Professional Responsibility.  *Id.* § 9(a).

Once the Board receives the Hearing Committee's report and recommendation, the parties have 10 days to file exceptions to the report.  *Id.* § 9(b); Board Pro. Resp. R. 13.3.  If exceptions are filed, the Board will schedule the matter for briefing and oral argument.  D.C. Bar R. XI, § 9(b); Board Pro. Resp. R. 13.4.  If no exceptions are filed, "the rights of the parties to brief and argue before the Board shall be waived, and the Board shall take action based on the record."  Board Pro.

Resp. R. 13.5; *see* D.C. Bar R. XI, § 9(b) ("If no exceptions are filed, the Board shall decide the matter on the basis of the Hearing Committee record.").

"When reviewing the findings of a Hearing Committee, the Board shall employ [a] 'substantial evidence on the record as a whole' test." Board Pro. Resp. R. 13.7. At the conclusion of its review, the Board will adopt or modify the Hearing Committee's report, remand the matter to the Hearing Committee for further proceedings, "direct Disciplinary Counsel to issue an informal admonition, or dismiss the petition." D.C. Bar R. XI, § 9(c); *see* Board Pro. Resp. R. 13.7. Unless the Board dismisses or remands the case, or unless the matter concludes in a reprimand or admonition, the Board will issue its own report and recommendation and submit it to this court. D.C. Bar R. XI, § 9(d).

After the Board's report and recommendation is submitted to the court, the parties have 20 days to file exceptions. *Id.* § 9(e). The court will then schedule the matter for briefing and consideration. *Id.* § 9(h)(1).[4] In determining the appropriate disposition, the court "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency

---

[4] In certain cases where neither party files exceptions, this court will enter an order imposing the Board's recommended discipline without further proceedings. D.C. Bar R. XI, § 9(h)(2). That provision is not relevant here.

toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *Id.*

## IV.    Disciplinary Violations

Before this court, Mr. Chapman asks that the disciplinary charges be "dismiss[ed]" because "[t]he Report and Recommendation unjustly seeks to blame and penalize [him] for [the district court]'s erroneous decision" to dismiss Ms. Roberts's case. Disciplinary Counsel responds that Mr. Chapman has forfeited the ability to contest the Hearing Committee's report because he failed to file exceptions before the Board. We agree with Disciplinary Counsel.

Our court has "consistently held that an attorney who fails to present a point to the Board waives that point and cannot be heard to raise it for the first time here." *In re Holdmann*, 834 A.2d 887, 889 (D.C. 2003) (quoting *In re Abrams*, 689 A.2d 6, 9 (D.C. 1997) (en banc)). That rule makes good sense. We have previously likened our review of the Board's reports and recommendations to our review of administrative agency decisions. *In re Abbey*, 169 A.3d 865, 870 (D.C. 2017). In the agency context, it is hornbook law that "[i]n the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative agency at the appropriate time." *Goodman v. D.C. Rental Hous. Comm'n*, 573 A.2d 1293, 1301 (D.C. 1990); *see Hughes v. D.C. Dep't of Emp.*

*Servs.*, 498 A.2d 567, 570 (D.C. 1985) ("Administrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review.").

As the entity charged with reviewing the Hearing Committee's factual findings and legal conclusions in the first instance, the Board must be apprised of issues that require its attention and input. It is thus incumbent on a party that disagrees with the Hearing Committee's findings or conclusions to raise those objections to the Board. A party's silence in the face of that obligation signals their acquiescence to the Hearing Committee's findings and conclusions. *See In re Green*, 136 A.3d 699, 700 (D.C. 2016) (per curiam) ("[An attorney]'s apparent acceptance before the Board of the determination that he ha[s] committed multiple rule violations precludes him from challenging, in this court, the Board's assessment of his misconduct.").

To be sure, the Board cannot merely rubber-stamp the Hearing Committee's report when no exceptions are filed. Instead, it must "decide the matter on the basis of the Hearing Committee record," D.C. Bar R. XI, § 9(b), "employ[ing a] 'substantial evidence on the record as a whole' test," Board Pro. Resp. R. 13.7. If the Board finds that the Hearing Committee erred such that its recommendation is not supported by substantial evidence, it should modify the Hearing Committee's

report, remand the matter to the Hearing Committee for further proceedings, "direct Disciplinary Counsel to issue an informal admonition, or dismiss the petition." D.C. Bar R. XI, § 9(c); *see* Board Pro. Resp. R. 13.7. But where, as here, the Board has independently undertaken and completed its substantial-evidence review, an aggrieved party may not belatedly complain to our court about an issue it failed to put before the Board. To allow otherwise would trivialize the Board's role.

We have recognized forfeiture in the attorney discipline context several times, but perhaps most explicitly in *In re Green*, 136 A.3d at 699-700, which dictates the outcome here. Mr. Green—like Mr. Chapman—failed to lodge any exceptions to the Hearing Committee's report before the Board. *Id.* As a result, our court held that he had "forfeited his substantive exceptions to the Board's assessment of his misconduct." *Id.* at 699. It did not matter that Mr. Green—also like Mr. Chapman— had presented arguments to the Hearing Committee, which he then repeated before our court. *Id.* at 699 n.1 (noting that Mr. Green had made "arguments . . . before the Ad Hoc Hearing Committee"). We explained, quite clearly, that a respondent cannot claim innocence of the charged violations if he "failed to avail himself of the opportunity to make th[at] argument[] to the Board in the first instance." *Id.* at 699-700. By failing to raise his arguments about the Hearing Committee's report with the Board, Mr. Green was "preclude[d] . . . from challenging, in this court, the Board's assessment of his misconduct." *Id.* at 700. Notably, we held Mr. Green to

his forfeiture even though his case concerned disbarment—the most severe disciplinary outcome possible. *Id.* at 701.[5]

While we are confident that *In re Green* disposes of this case, we would be remiss if we did not acknowledge that we have, on occasion, exercised our discretion to look past a party's forfeiture in the attorney discipline context. For example, in *In re Johnson*, 158 A.3d 913 (D.C. 2017), both parties withdrew their exceptions before the Board, permitting the Board to proceed on the Hearing Committee's record alone. *Id.* at 917. After reviewing the record, the Board agreed with the Hearing Committee about the disciplinary violations, but "explicitly acknowledged" a discrete legal issue that the respondent had raised before the Hearing Committee and "concurred with the . . . rejection of the argument." *Id.* On appeal, "we re-emphasize[d] that arguments to this court should ordinarily be presented to the Board to ensure proper appellate review." *Id.* But because the Board had adverted to the

---

[5] In *In re Green*, the court considered without deciding whether to "recognize a safety valve allowing a respondent who fails to make any arguments before the Board to challenge an obvious miscarriage of justice by the Board." 136 A.3d at 700 n.3. In our view, that "safety valve" already exists. First, it is grounded in D.C. Bar R. XI, § 9(h)(1), which requires this court to satisfy itself that the Board's findings are supported by substantial evidence in the record. Surely a miscarriage of justice by the Board would affect our substantial-evidence review. Second, and as explained *infra*, this court retains the discretion to forgive a party's forfeiture in an appropriate case. *See Goodman*, 573 A.2d at 1301; *In re Johnson*, 158 A.3d 913, 917 (D.C. 2017).

issue and in order "to put the question to rest," we deemed it worthwhile to consider "the tardy argument." *Id*.

While we excused the respondent's forfeiture in *In re Johnson*, that case is the exception and *In re Green* is the rule. Indeed, the court in *In re Johnson* made clear that respondents in disciplinary proceedings are "ordinarily" expected to make their exceptions to the Hearing Committee's report known to the Board "to ensure proper appellate review." *Id.* Our decision to address Mr. Johnson's "tardy" argument was an exercise of discretion, both animated by the Board's own decision to consider it and aimed at putting to rest a recurring question in reciprocal discipline matters. *Id.* We discern no similar salutary reason to excuse Mr. Chapman's forfeiture here.

Nor do we see any exceptional circumstances that would warrant our looking past Mr. Chapman's failure to raise his objections with the Board—in fact, the circumstances are quite to the contrary. *Cf. Goodman*, 573 A.2d at 1301. When asked at oral argument why he had not filed exceptions with the Board, Mr. Chapman first contended that he had, and then later claimed that he was "unaware" of the procedure for doing so. The first response is not true and the second is not a valid excuse. We expect licensed attorneys to understand the relevant procedural rules in their matters, no matter the subject or field. *See In re Haar*, 270 A.3d 286, 299 (D.C. 2022) (agreeing with the Board's conclusion that "every

lawyer—regardless of his or her employment, area of practice or level of seniority—should read, become familiar with, understand, and adhere to the Rules of Professional Conduct and the Court's decisions applying those Rules"). That expectation is even higher here, because this is not Mr. Chapman's first tour through the disciplinary process. *See generally In re Chapman*, 962 A.2d 922 (D.C. 2009) (per curiam) (suspending Mr. Chapman for 60 days with 30 days stayed in favor of a one-year term of probation for neglecting a client's case and failing to properly conduct discovery).

By not objecting to the Hearing Committee's report when he had the chance, Mr. Chapman has forfeited his ability to challenge its substance in this court. Under D.C. Bar R. XI, § 9(h)(1), we accept the Board's determination that Mr. Chapman violated four Maryland Rules of Professional Conduct.[6]

## V.    Sanction

The Board concurred with the Hearing Committee's recommendation that Mr. Chapman be suspended for 90 days. The Board's recommended sanction comes to us with a "strong presumption in favor of its imposition," *In re Hallmark*, 831 A.2d 366, 371 (D.C. 2003)—a presumption that is even stronger where, as here, the

---

[6] Our holding that Mr. Chapman forfeited his arguments before this court does not imply that, if preserved, his arguments would have merit.

respondent does not contest it, *In re Drew*, 693 A.2d 1127, 1128 (D.C. 1997) (per curiam). Ultimately, though, the responsibility of "imposing sanctions rests with this court in the first instance," *In re Godette*, 919 A.2d 1157, 1164 (D.C. 2007) (quoting *In re Temple*, 629 A.2d 1203, 1207 (D.C. 1993)), and we must ensure that we do not "foster a tendency toward inconsistent dispositions for comparable conduct," D.C. Bar R. XI, § (h)(1).[7]

We are satisfied that a 90-day suspension falls within the range of our prior sanctions for similar conduct. *See, e.g.*, *In re Pearson*, 228 A.3d 417, 429 (D.C. 2020) (per curiam) (issuing a 90-day suspension for violating D.C. R. Pro. Conduct 3.1, the analogue to Maryland's rule); *In re Yelverton*, 105 A.3d 413, 428-29 (D.C. 2014) (issuing a 30-day suspension with a fitness requirement for reinstatement for violating D.C. R. Pro. Conduct 3.1); *In re Lattimer*, 223 A.3d 437, 456 (D.C. 2020) (per curiam) (imposing a 60-day suspension with a fitness requirement for reinstatement for violating D.C. R. Pro. Conduct 1.4 and Va. R. Pro. Conduct 1.1, 1.3, and 8.4).

---

[7] Even when we evaluate misconduct under the rules of another jurisdiction, we make sanctions determinations pursuant to the District's case law. *See In re Ponds*, 888 A.2d 234, 240-41 (D.C. 2005) (applying District law where the respondent was charged with violating the Maryland Rules of Professional Conduct).

## VI.    Conclusion

For the foregoing reasons, Mr. Chapman is hereby suspended from the practice of law in the District of Columbia for 90 days.  For purposes of reinstatement, Mr. Chapman's suspension will not begin to run until he files an affidavit that fully complies with the requirements of D.C. Bar R. XI, § 14(g).

*So ordered.*