## In re Patrick J. COLE, Respondent.

## A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 358025).

### No. 07–BG–1388.

District of Columbia Court of Appeals.

Argued March 11, 2009.

Decided March 26, 2009.

Barry E. Cohen, Washington, for respondent.

Joseph N. Bowman, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel were on the brief, for the Office of Bar Counsel.

Before REID, FISHER and BLACKBURNE–RIGSBY, Associate Judges.

REID, Associate Judge:

The Board on Professional Responsibility ("the Board") recommends that respondent, Patrick J. Cole, be suspended from the practice of law for a period of thirty days for his violation of the Rules of Professional Conduct pertaining to competent and diligent representation, communication with a client, and interference with the administration of justice. We accept the Board's recommended sanction because it "falls within the range of acceptable outcomes, [and hence], comes to us with a strong presumption in favor of its imposition." *In re Steele*, 868 A.2d 146, 153 (D.C.2005) (citation omitted).

#### FACTUAL SUMMARY

The facts of this case are undisputed. Francis Tarzol Dogba, a citizen of Liberia, West Africa who had been given Temporary Protected Status by the Immigration and Naturalization Service after his arrival in the United States in late January 2001, retained Mr. Cole on March 11, 2002, in

connection with his effort to seek asylum.[1] During an October 16, 2002 hearing before the United States Immigration Court in Baltimore, Maryland, at which Mr. Dogba appeared with Mr. Cole as his counsel, the judge ruled that Mr. Dogba's *pro se* application for asylum was defective, and ordered him to file a new application by December 16, 2002.

Although Mr. Dogba had paid Mr. Cole at least $900.00 as a retainer, and had asked him to prepare a proper asylum application, Mr. Cole neither filed a timely new application, nor made a request for an extension of time to file the application, despite Mr. Dogba's repeated calls to Mr. Cole, inquiring about the status of his application. Eventually, Mr. Cole informed Mr. Dogba, incorrectly, that the new application had been filed. When the Immigration Court did not receive a proper asylum application from Mr. Dogba, it issued and mailed to Mr. Cole an order on January 6, 2003, allowing Mr. Dogba thirty days in which to depart the country voluntarily, and an alternate order removing him to Liberia in the event he did not depart

voluntarily. When Mr. Dogba again inquired about the status of his application, Mr. Cole lied, telling him that his case was delayed because the judge did not receive the application, and failing to tell him about the voluntary departure and removal orders. Mr. Cole did not move to reopen Mr. Dogba's asylum proceeding, nor did he appeal the deportation order. Upon learning that Mr. Cole never filed a new asylum application, Mr. Dogba terminated Mr. Cole's representation, and retained new counsel.[2]

As a result of Mr. Dogba's August 9, 2005 complaint against Mr. Cole, Bar Counsel initiated disciplinary proceedings and filed nine formal charges against him in December 2006.[3] During a hearing on February 20, 2007 before Hearing Committee Number Nine, Bar Counsel presented exhibits, including the case file in Mr. Dogba's immigration matter, Mr. Cole's June 2, 2004 letter to Mr. Dogba's new counsel, indicating his intent to apologize personally to Mr. Dogba for "the ineffectiveness of [his] representation of Mr. Dogba [which] is without defense,"[4] and

---

1. Mr. Dogba and his family were associated with the political leadership of Liberia, and when that leadership changed, he fled Liberia because he and his family were targets of persecution by the new leadership.

2. New counsel's efforts to reopen Mr. Dogba's asylum case, including an appeal to the Board of Immigration Appeals, failed. However, Mr. Dogba's marriage to a United States citizen on May 12, 2006, prompted the Board of Immigration Appeals to conclude that he should be given an opportunity to file an application for an adjustment of his immigration status based on the marriage. Hence, his case was remanded to the Immigration Court on August 7, 2006, to permit the filing of the adjustment application.

3. Bar Counsel charged violations of Rules 1.1(a), failure to provide competent representation to Mr. Dogba; 1.1(b), failure to "serve [Mr. Dogba] with the skill and care ... generally afforded to clients by other lawyers in

similar matters"; 1.3(a), failure to represent Mr. Dogba "zealously and diligently"; 1.3(b), intentional failure "to seek the lawful objectives" of Mr. Dogba; 1.3(c), failure to "act with reasonable promptness in representing [Mr. Dogba]"; 1.4(a), failure "to keep [Mr. Dogba] reasonably informed about the status [of his immigration] matter" and to "comply with [his] requests for information," 1.4(b), failure to "explain" the immigration matter to Mr. Dogba so that he could "make informed decisions regarding the representation"; 8.4(c), misconduct amounting to "dishonesty, fraud, deceit or misrepresentation"; and 8.4(d), "engag[ing] in conduct that seriously interfere[d] with the administration of justice."

4. Mr. Cole concluded his June 2, 2004 letter to successor counsel by stating:

I am aware that there will be consequences to me as a result of my failure as

the October 2006 factual stipulations signed by Bar Counsel and Mr. Cole. Mr. Cole testified, detailing his background, his solo practice, the increase in his solo workload when he took over the practice of a suspended attorney in 2002, his failures in his representation of Mr. Dogba, and his untruthfulness with Mr. Dogba. Mr. Cole presented as character witnesses, Jay Antoinette Lowe who was represented by Mr. Cole in 1987, and Julio Hernandez, who retained Mr. Cole to represent him in an immigration matter. Ms. Lowe, who later became an immigration attorney and who sought advice from Mr. Cole about her practice, described Mr. Cole as "incredibly competent" in his representation of her. She also stated that he is "well regarded" by immigration lawyers in Baltimore where she practiced. Mr. Cole represented Mr. Hernandez for six years in a labor certification immigration matter, with a successful outcome for both Mr. Hernandez and his wife. Mr. Hernandez has referred Mr. Cole to four or five persons as someone "always willing to help" and "to get everything [done] in a timely manner."

The Hearing Committee found violations of all of the charged rules except Rule 8.4(d),[5] but because of Mr. Cole's "level of contrition combined with the lack of evidence that his situation was anything other than an isolated incident," the Committee recommended only a thirty-day suspension and a "one-year period of probation supervised by a practice monitor." The Board generally agreed with the Hearing Committee as to Mr. Cole's serious rule violations, but disagreed with the Committee's finding that Mr. Cole did not violate Rule 8.4(d). The Board found persuasive Bar Counsel's argument that Mr. Cole's misconduct significantly tainted the administration process for two reasons. First, Mr. Dogba " 'permanently lost the opportunity to obtain permanent residence in the United States based on the facts alleged in the political asylum.' " Second, Mr. Cole's misconduct "led to an unnecessary expenditure of time and resources by the Immigration Court as Mr. Dogba's new counsel took belated steps to try to rectify the situation left by [Mr. Cole]." These steps required successor counsel to file a new motion, immigration prosecutors to file papers in opposition, the Immigration Court to prepare a Memorandum of Decision and Order denying the motion, all parties to prepare appellate documents for filing, and the Board of Immigration Appeals to draft an opinion. As to the sanction, the Board agreed with the Hearing Committee that Mr. Cole's misconduct was serious, but primarily because he had no prior misconduct, displayed a high level of contrition, "sought to mitigate the consequences of his action,"[6] and presented two favorable character witnesses, the Board deemed the appropriate sanction to be a thirty-day suspension.[7]

---

an attorney; and will ashamedly, but willingly give written or oral testimony before the Bar Association, the government, or any other forum that, in your judgment, may mitigate the results of my representation of Mr. Dogba.

5. The Hearing Committee did not find a violation of Rule 8.4(d) because "[a]lthough [Mr. Cole's] actions clearly prejudiced Mr. Dogba, they did not interfere with, or prevent the Immigration Court from, favorably ruling on Mr. Dogba's Motion to Reopen."

6. On his own initiative and before Bar Counsel's charges were filed against him, Mr. Cole refunded the $900.00 retainer that Mr. Dogba paid him, cooperated with new counsel in trying to reverse his lack of action in the Immigration Court, apologized to Mr. Dogba and expressed remorse for his handling of Mr. Dogba's case.

7. The Board saw no evidence of a need for probation and a practice monitor to oversee his practice.

Neither Mr. Cole nor Bar Counsel filed exceptions to the Board's Report and Recommendation. However, a motions panel of this court decided to order the parties to file briefs on the appropriateness of the recommended sanction in light of the seriousness of Mr. Cole's misconduct.

## ANALYSIS

In response to this court's order concerning the appropriateness of the recommended sanction, Mr. Cole argues that we should give "deference" to the Board's recommended sanction because "it reflects a careful and thorough evaluation of the factors which should be considered in imposing discipline, and is not inconsistent with discipline imposed in similar cases." Bar Counsel acknowledges that it did not take exception to the Board's recommended sanction, explaining that Bar Counsel "did not believe [the recommended sanction] to be so out of line with sanctions [this c]ourt has imposed in comparable cases as to warrant full briefing and argument before the [c]ourt." Nevertheless, Bar Counsel believes that its original recommendation to the Hearing Committee of a sixty-day suspension, "with thirty days stayed in favor of one year of probation supervised by a practice monitor [ ] is more consistent with precedent and the facts of this case."

 Since the fundamental facts of this matter are undisputed, we focus only on the appropriate sanction. The court decides the sanction to be imposed. *See In re Temple,* 629 A.2d 1203, 1207 (D.C. 1993). "So long as the Board's sanction recommendation falls within the wide range of acceptable outcomes, it comes to us with a strong presumption in favor of its imposition...." *In re Bingham,* 881 A.2d 619, 623 (D.C.2005) (per curiam); *see also In re Steele, supra,* 868 A.2d at 153. Our disciplinary rules mandate that we "adopt the recommended disposition of the

Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1). Our sanctions have been based upon a number of factors, including:

> (1) the seriousness of the conduct at issue; (2) the prejudice, if any, to the client which resulted from the conduct; (3) whether the conduct involved dishonesty and/or misrepresentation; (4) the presence or absence of violations of other provisions of the disciplinary rules[;] (5) whether the attorney had a previous disciplinary history; (6) whether or not the attorney acknowledged his or her wrongful conduct; and (7) circumstances in mitigation of the misconduct.

*In re Thyden,* 877 A.2d 129, 144 (D.C. 2005) (citations omitted). We have also focused on "the moral fitness of the attorney, and the need to protect the legal profession, the courts, and the public." *In re Bingham, supra,* 881 A.2d at 623 (citations and internal quotation marks omitted). We have explained that "[o]ur purpose in conducting disciplinary proceedings and imposing sanctions is not to punish the attorney; rather, it is to offer the desired protection by assuring the continued or restored fitness of an attorney to practice law." *In re Steele,* 630 A.2d 196, 200 (D.C.1993) (citing *In re Kennedy,* 542 A.2d 1225, 1228 (D.C. 1988)).

 Obviously, Mr. Cole's misconduct was serious. Neglect of a client matter, failure to communicate with a client, dissembling or lying to a client, and causing parties and judicial tribunals to engage in unnecessary work because of one's failures all constitute abhorrent actions. In this case, as the Board found, Mr. Cole's misconduct, including his dishonesty, prejudiced Mr. Dogba. Balanced against these negatives, however, is Mr. Cole's prior

clean slate, reflecting no past disciplinary action against him. On the positive side, also, is not only Mr. Cole's candor with Mr. Dogba's successor counsel and his personal apology to Mr. Dogba in June 2004, but also his decision to assist in successor counsel's efforts to reverse the impact of his own representational failures, his transmittal of $900.00 (the amount of Mr. Dogba's retainer fee) to Mr. Dogba in October 2006, his truthfulness and evident remorse during his disciplinary hearing, and the testimony of his character witnesses. The Board further concluded that the Dogba matter "was a single incident in an otherwise unblemished record as a practicing attorney," and the Board saw no need for either "a practice monitor to oversee [Mr. Dogba's practice]" or for a period of probation.

The Board examined several of our prior cases before settling on a thirty-day suspension as its recommended sanction—*In re Drew*, 693 A.2d 1127 (D.C.1997) (per curiam) (sixty-day suspension); *In re Owusu*, 886 A.2d 536 (D.C.2005) (sixty-day suspension, restitution to the client of $3,500 plus interest, and a fitness requirement); *In re Joyner*, 670 A.2d 1367 (D.C. 1996) (thirty-day suspension and a continuing legal education course on legal ethics); *In the Matter of Banks*, 577 A.2d 316 (D.C.1990) (per curiam) (sixty-day suspension); *In re Ontell*, 593 A.2d 1038 (D.C. 1991) (*Ontell I*) (thirty-day suspension);[8] and *In re Outlaw*, 917 A.2d 684 (D.C.2007) (per curiam) (sixty-day suspension).

There are appreciable differences between Mr. Cole's situation and that of respondents Owusu, Outlaw, and Drew, who received sixty-day suspensions for similar misconduct. Mr. Owusu failed to properly file an application for adjustment of his client's immigration status, did not attend an important interview with immigration officials, and had no further contact with his client. Unlike Mr. Cole, Mr. Owusu did not make restitution prior to the Board's recommendation; nor did he make an effort to assist successor counsel in the immigration matter. There were questions raised (but not resolved against him) concerning Mr. Owusu's non-participation in the disciplinary proceedings.[9] Ms. Outlaw failed to file her client's personal injury action before the expiration of the statute of limitations, but in contrast to Mr. Cole's indisputable credibility and remorsefulness during the disciplinary proceedings, the Hearing Committee found that she was not credible and as the Board points out, she "refused to accept any personal responsibility for her neglect." Mr. Drew failed to file requested appeals for two of his criminal clients. Unlike Mr. Cole, Mr. Drew had received three prior disciplinary informal admonitions, failed to present any evidence in mitigation of his misconduct, and displayed an "attitude" problem.

*Ontell I, In re Joyner*, and *In the Matter of Banks* reveal the appropriateness of a thirty-day suspension in Mr. Cole's case, with no probation or practice monitor. *Ontell I* involved two separate disciplinary

8. Several years later, Mr. Ontell was disciplined again due to his neglect of client matters. *See In re Ontell*, 724 A.2d 1204, 1205 (D.C.1999) (per curiam) (*Ontell II*) (ninety-day suspension, with sixty days "suspended contingent upon respondent's acceptance and successful completion of a one-year probation period under the supervision of a Practice Monitor").

9. The Board did not find a violation of Rule 8.4(d) as charged by Bar Counsel because there were factual questions as to whether Mr. Owusu received proper notice of the disciplinary inquiry.

matters, whereas Mr. Cole's case concerned only one matter. While representing a personal injury client Mr. Ontell failed to respond to discovery requests and a motion to compel, and took no action to reinstate the lawsuit following a default judgment. In his second matter, Mr. Ontell filed a complaint for his client in a commercial matter but never effected service of process, and did not respond to a notice that the complaint would be dismissed within a month in the absence of action. In addition, he made misrepresentations to the second client, saying untruthfully that he had obtained a Superior Court judgment. The Board noted mitigating factors in Mr. Ontell's case, which supported only a thirty-day suspension, including his candor and cooperativeness during the disciplinary proceeding.

In some respects, Mr. Joyner's behavior seems to be more serious than that of Mr. Cole. Mr. Joyner did not file his client's personal injury lawsuit before the expiration of the statute of limitations; Bar Counsel charged him with neglecting a client matter, and failing to seek the lawful objectives of the client and prejudicing the client. When the client sued him and won a legal malpractice judgment for $25,000, Mr. Joyner did not satisfy the judgment. His disciplinary history showed two prior informal admonitions for neglect of client matters. Although he argued that his sanction should be a suspended thirty-day suspension, with one year of probation under a practice monitor, we followed the Board's recommendation of a thirty-day suspension and completion of a course on legal ethics. After examining *In re Stow*, 633 A.2d 782 (D.C.1993) (per curiam), as the Board did in Mr. Cole's case, we ex-

plained that the Board recommended a practice monitor in that case because "[Mr.] Stow handled two hundred cases a year and had 'an aversion to paperwork, [which] created a high risk that he [would] be back before the disciplinary system on a future neglect case.'" *In re Joyner*, 670 A.2d at 1369 (quoting *In re Stow*, 633 A.2d at 785). Similarly, the Board decided not to follow a Hearing Committee's recommendation that Mr. Banks, who was charged with neglect for failing to file his client's personal injury complaint before the statute of limitations expired, "be suspended for 60 days, of which 30 days would be stayed pending a one year probation period under the supervision of a practice monitor." *In the Matter of Banks, supra*, 577 A.2d at 318. Mr. Banks, unlike Mr. Cole, had been disciplined on three prior occasions, but "[i]n the Board's view, a practice monitor was not needed since respondent's cooperation and contrition signaled his willingness to prevent similar conduct from recurring." *Id.* Mr. Cole has no prior disciplinary record, only one client matter is involved in this discipline, and Mr. Cole's actions reveal that he has taken steps to avoid the recurrence of a Dogba-type situation.[10] Therefore, we agree with the Board that nothing in this record suggests the need for a practice monitor.

In sum, on this record, and in light of comparable cases reflecting a range of acceptable outcomes, we are satisfied that the Board's recommended sanction falls within that range, and "would [not] foster a tendency toward inconsistent dispositions for comparable conduct [n]or would [it] otherwise be unwarranted." *In re Bingham, supra*, 881 A.2d at 623; *In re*

---

**10.** During oral argument, counsel for Mr. Cole asserted that he has computerized his calendar, no longer maintains multiple offices, and does not have an exceptionally heavy workload, as he did in 2002 when he took over the practice of a suspended attorney.

*Steele, supra,* 868 A.2d at 153; *Ontell I, supra; In re Joyner, supra.* Accordingly, given the strong presumption in favor of the Board's recommended sanction, it is hereby

**ORDERED** that Patrick J. Cole is suspended from the practice of law in the District of Columbia for a period of thirty (30) days, effective in accordance with D.C. Bar R. XI, § 14(f). Respondent's attention is called to the requirements of D.C. Bar R. XI, § 14(g).