*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-BG-0565

IN RE KENNETH BLACKWELL, RESPONDENT.

A Member of the Bar
of the District of Columbia
(Bar Registration No. 441413)

On Report and Recommendation
of the Board on Professional Responsibility
(Disciplinary Docket No. 2016-D396)
(Board Docket No. 20-BD-019)

(Argued April 19, 2023                    Decided August 10, 2023)

*Kenneth L. Blackwell*, pro se.

*Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, for the Office of Disciplinary Counsel. *Hamilton P. Fox, III*, Disciplinary Counsel, *Myles V. Lynk*, Senior Assistant Disciplinary Counsel, and *Julia L. Porter*, Deputy Disciplinary Counsel, were on the brief for the Office of Disciplinary Counsel.

Before MCLEESE, ALIKHAN, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: In this bar disciplinary matter, the District of Columbia Board on Professional Responsibility ("Board") concluded in a Report and Recommendation ("Report") that Respondent Kenneth L. Blackwell violated D.C. R. Prof. Conduct 3.4(c), which prohibits a lawyer from knowingly disobeying an obligation under the rules of a tribunal, by failing to pay court-ordered child

support, and Rule 8.1(a), which prohibits a lawyer from knowingly making a false statement of fact in connection with a disciplinary matter, by knowingly providing a false response to a question Disciplinary Counsel posed during its investigation. The Board recommended a sanction of a six-month suspension with all but 60 days stayed in favor of three years of probation.

Mr. Blackwell filed exceptions to the Report in this court. Mr. Blackwell essentially concedes the Rule 3.4(c) violation but takes issue with its severity, and he disputes the Board's finding of a Rule 8.1(a) violation. He also argues that Disciplinary Counsel's delay in issuing the Specification of Charges was unreasonable and prejudicial, and he seeks a lesser sanction. We assume based on Mr. Blackwell's concession that he violated Rule 3.4(c) and agree with the Board that Mr. Blackwell violated Rule 8.1(a). We are not persuaded by Mr. Blackwell's argument that Disciplinary Counsel's delay in prosecuting the case deprived him of due process. Finally, we adopt the Board's recommended sanction.

## I.     Background

### A.     Factual Background

The Ad Hoc Hearing Committee and the Board made the following findings of fact, which are largely undisputed and which we adopt, mindful of our obligation to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." D.C. Bar R. XI, § 9(h)(1).

Mr. Blackwell was admitted to the District of Columbia Bar in 1994. Mr. Blackwell and Cinzia Allen are the parents of D.B. They have never been married, but have been parties to various child support arrangements since 2004, when D.B. was born. In 2006, Mr. Blackwell and Ms. Allen engaged in a custody dispute that resulted in the Virginia Division of Child Support Enforcement ("VDCSE") requesting that the Maryland Office of Child Support Enforcement ("MOCSE") in Prince George's County issue a child support order pursuant to the Uniform Interstate Family Support Act.[1] In May 2007, the Circuit Court of Prince George's County, Maryland, issued a consent order requiring Mr. Blackwell to make monthly child support payments to the MOCSE in the amount of $156. That court later increased the payment amount to $250 per month and then to $500 per month and ordered Mr. Blackwell to pay $50 per month toward arrearages, which it assessed at $5,000 as of December 2007.

---

[1] Ms. Allen and D.B. lived in Virginia during the relevant period, while Mr. Blackwell lived in Maryland or the District of Columbia.

In April 2009, Ms. Allen asked the Juvenile and Domestic Relations District Court of Prince William County, Virginia, to register the Maryland support order and filed a motion to hold Mr. Blackwell in contempt for failure to pay child support, alleging that he was $12,500 in arrears. The Virginia court registered the Maryland support order, making it enforceable in Virginia. After a hearing in December 2009, the Virginia court held Mr. Blackwell in contempt and sentenced him to 90 days in jail with a purge charge of $3,000 and an appeal bond of $16,500. Mr. Blackwell's brother paid the purge charge, which was then credited toward Mr. Blackwell's support obligations.

Meanwhile, on a parallel track in Maryland, the MOCSE filed a petition for contempt with a Maryland court in September 2009. The court held hearings on the petition in November 2009 and March 2010. During the 2010 hearing, Mr. Blackwell told the magistrate judge that he was unemployed and was therefore unable to make all required payments. The magistrate judge made clear that Mr. Blackwell was obligated to pay child support regardless of his employment status, and scheduled another contempt hearing in May 2010. Mr. Blackwell then paid $100 to the court.

At the May hearing, Mr. Blackwell told the Maryland court that he had been

making payments directly to Ms. Allen, but he had no documentation to support that claim. The court advised him that he would receive credit for payments made directly to Ms. Allen only if he submitted a notarized statement from Ms. Allen certifying the payments. Neither the MOCSE nor the VDCSE had records of payments from Mr. Blackwell in the months following this hearing, and neither Mr. Blackwell nor Ms. Allen produced records of any payments Mr. Blackwell made directly to Ms. Allen during that time.

In October 2010, at Ms. Allen's request, the VDCSE closed its pending case against Mr. Blackwell. The VDCSE notified the MOCSE of the closure but requested that Maryland not terminate its support order so that Ms. Allen could reopen the case at a later date if necessary. VDCSE advised MOCSE that, at the time of the case closure, Mr. Blackwell owed $18,520—not including any payments Mr. Blackwell may have made directly to Ms. Allen—but that the arrearages were removed for purposes of enforcement due to the closure. In December 2010, in response to a joint motion submitted by Ms. Allen and Mr. Blackwell, the Maryland court dismissed the contempt proceedings, required Mr. Blackwell to make payments directly to Ms. Allen, and closed the child support proceedings, but it left the child support order in effect.

In June 2014, in response to a request from Ms. Allen, the VDCSE reactivated

its case and began mailing "Change in Payee" notices to Mr. Blackwell, directing him to send the child support payments to the agency instead of to Ms. Allen. At that point, the VDCSE's records indicated that Mr. Blackwell was $36,520 in arrears. Mr. Blackwell asserted that he never received these "Change in Payee" notices. Ms. Allen acknowledged that the VDCSE had trouble serving Mr. Blackwell and that mail the VDCSE sent to Mr. Blackwell had been returned, although VDCSE records show that the agency tried to contact Mr. Blackwell by email as well. In any event, there is no evidence that the VDCSE ever served Mr. Blackwell or sent Mr. Blackwell notice by certified mail, as required by Va. Code Ann. § 20-60.5(A)(2), and the Office of Disciplinary Counsel conceded that it had not established that Mr. Blackwell received the letters.

The VDCSE also contacted Mr. Blackwell by telephone. In November 2014, a VDCSE staff member spoke to Mr. Blackwell. Notes from this call indicate that Mr. Blackwell told the VDCSE that he would begin making payments. VDCSE records show, however, that no payments were made. In June 2016, a VDCSE staff member spoke to Mr. Blackwell by phone again and asked why he had not been paying his support. During this call, Mr. Blackwell stated that Ms. Allen had closed the case. When the staff member advised him that Ms. Allen had reopened the case, Mr. Blackwell got "very angry" and accused Virginia of being a "racist state."

VDCSE records show that Mr. Blackwell made no payments to the VDCSE after the 2016 call.

## B.    Disciplinary Proceedings

In October 2016, Ms. Allen filed a complaint with the Office of Disciplinary Counsel, alleging that Mr. Blackwell had failed to make court-ordered child support payments, was roughly $50,000 in arrears, and had failed to appear in court when requested.   Mr. Blackwell denied the allegations in response to the complaint, stating, among other things, that he "never . . . willfully failed to make child support payment pursuant to any court order."

In February 2017, Disciplinary Counsel sent Mr. Blackwell questions, one of which was the following: "You state that you never 'willfully failed to make child support payment pursuant to any court order.'  If you have not 'willfully' failed to make court-ordered child support payments, do you agree that you failed, however, to make the court ordered support payments."  In response, Mr. Blackwell wrote: "No."

Disciplinary Counsel instituted formal proceedings against Mr. Blackwell in

February 2020. As relevant here, the Specification of Charges alleged that Mr. Blackwell had violated D.C. R. Prof. Conduct 3.4(c) by failing to comply with a court order to make child support payments and D.C. R. Prof. Conduct 8.1(a) by knowingly making a false statement to Disciplinary Counsel when he answered "no" to the question whether he failed to make court-ordered child support payments.[2]

Mr. Blackwell moved to dismiss the charges on two grounds relevant here. First, he argued that the Rule 3.4(c) charge did not relate to his fitness to practice law. The Ad Hoc Hearing Committee disagreed, concluding that Rule 3.4(c) can apply to a lawyer's conduct outside the context of client representation and specifically to a lawyer's failure to pay child support, and the Board concurred.

Second, Mr. Blackwell asserted that he had been prejudiced by the three-year delay between the filing of Ms. Allen's complaint and the Specification of Charges, claiming the delay resulted in the loss of relevant evidence. As ordered by the Maryland court in October 2009, Mr. Blackwell and Ms. Allen had maintained a "visitation notebook" in which they were required to enter information and concerns

---

[2] Mr. Blackwell was also charged with violating Rule 8.4(c), but the Board did not uphold the charge and Disciplinary Counsel does not challenge that determination.

about D.B. for purposes of communicating with each other. At the Committee hearing, Mr. Blackwell claimed that the notebook contained information about payments that he had made directly to Ms. Allen; Ms. Allen testified that that was "possible" but that she had lost the notebook in 2018. Mr. Blackwell argued that he would not have been deprived of that evidence if the Specification of Charges had been filed earlier. The Board agreed with the Ad Hoc Hearing Committee that Mr. Blackwell had not shown a denial of due process, as required for dismissal, because he could have obtained the notebook after Ms. Allen's complaint but before the notebook was lost and, in any event, payments recorded in the visitation notebook would not have refuted the charges.

The Hearing Committee conducted an evidentiary hearing and concluded in a Report and Recommendation that Mr. Blackwell's failure to pay court-ordered child support constituted a violation of D.C. R. Prof. Conduct 3.4(c) and his knowing false statement to Disciplinary Counsel constituted a violation of D.C. R. Prof. Conduct 8.1(a).

The Board adopted the Hearing Committee's findings of fact as supported by substantial evidence in the record. The Board agreed with the Hearing Committee's conclusion that Disciplinary Counsel had proven by clear and convincing evidence

that Mr. Blackwell had violated D.C. R. Prof. Conduct 3.4(c) by failing to comply with an order issued by the Maryland court in 2007 requiring him to make child support payments to the MOCSE. The Board also agreed with the conclusion that Mr. Blackwell had violated D.C. R. Prof. Conduct 8.1(a), finding that Mr. Blackwell had known the response at issue was false when he provided it to Disciplinary Counsel. The Board recommended a sanction of a six-month suspension with all but 60 days stayed in favor of three years of probation, subject to the following conditions:

> (1) that [Mr. Blackwell] shall not violate any Rules of Professional Conduct;
>
> (2) that no later than 30 days after entry of the Court's order, [Mr. Blackwell] shall begin to make monthly payments pursuant to a schedule and in an amount sufficient to fully satisfy his child support obligations (including any current arrearage) by the end of the probationary period . . . without prejudice to [Mr. Blackwell] seeking a modification of his child support obligations, in which case he must comply with the modified order by the completion of the probationary period[;] and
>
> (3) that Mr. Blackwell shall provide Disciplinary Counsel with the payment schedule, and every three months shall provide Disciplinary Counsel with a statement from the VDCSE showing his compliance with the payment schedule, or evidence showing that he has made the payments required under the schedule.

The Board recommended that, if Mr. Blackwell did not satisfy his child

support obligations by the end of the probation period, he would need to serve the stayed portion of the suspension and satisfy his child support obligations prior to reinstatement.

## II.    Discussion

We "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and [we] adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). "Substantial evidence means enough evidence for a reasonable mind to find sufficient to support the conclusion reached." *In re Evans*, 902 A.2d 56, 70 (D.C. 2006) (per curiam) (internal quotation marks omitted). We review the Board's legal conclusions de novo. *In re Samad*, 51 A.3d 486, 495 (D.C. 2012) (per curiam).

Before this court, Mr. Blackwell concedes that Rule 3.4(c) applies to an attorney ordered, as a party and not an advocate, to make child support payments, and that he therefore violated Rule 3.4(c) between 2007 and 2009; he simultaneously asserts, however, that he substantially complied with his child support obligations

by directly paying Ms. Allen much of what he owed. Mr. Blackwell challenges the conclusion that he violated Rule 8.1(a), arguing that the question Disciplinary Counsel posed to him was ambiguous and that the Hearing Committee did not make a finding as to his mental state when answering the question. Mr. Blackwell also renews his argument that the charges should be dismissed or, in the alternative, that the sanction should be reduced because of the three-year delay between Ms. Allen's complaint and the Specification of Charges. Finally, Mr. Blackwell challenges the Board's recommended sanction.

We assume that Mr. Blackwell violated Rule 3.4(c), agree with the Board that he violated Rule 8.1(a), and conclude that he was not prejudiced by the delay in prosecuting this matter. Finding the recommended six-month suspension with all but 60 days stayed in favor of three years of probation within the range of acceptable outcomes, we adopt it.

### 1. The Delay Between the Complaint and the Charges

Mr. Blackwell argues that Disciplinary Counsel's delay in issuing the Specification of Charges prejudiced him and thus warrants dismissal of the charges. The basis for this argument is the loss of the "visitation notebook" that allegedly

contained information about payments Mr. Blackwell had made directly to Ms. Allen after October 2009.

"[A]n undue delay in prosecution is not in itself a proper ground for dismissal of charges of attorney misconduct." *In re Ekekwe-Kauffman*, 210 A.3d 775, 785 (D.C. 2019) (per curiam) (internal quotation marks omitted). "Undue delay may result in a due process violation, however, if the respondent demonstrates actual prejudice—that is, that the delay in prosecution impaired [the respondent's] defense." *Id.* (internal quotation marks omitted); *see In re Klayman*, 282 A.3d 584, 591 (D.C. 2022) (per curiam) (stating that "mere delay in the disciplinary process generally does not provide a legitimate ground for dismissal of the complaint, because the public interest in regulating members of the bar takes precedence over the attorney's interest in having claims speedily resolved" and that "undue delay must be coupled with actual prejudice in order to justify dismissal") (internal quotation marks and brackets omitted).

Even assuming Disciplinary Counsel's delay was undue or unreasonable, we discern no due process violation in this case. There are two key problems with Mr. Blackwell's position. First, Mr. Blackwell has conceded that he violated Rule 3.4(c) at least with respect to 2007 to 2009. Accordingly, even if the notebook would have

demonstrated that he made some payments to Ms. Allen after October 2009, dismissal of the charge would not be an appropriate remedy.

Second, the evidentiary value of the notebook is unclear at best. The Board found that, "even viewing the evidence in the light most favorable to [Mr. Blackwell], [the notebook] shows at most that he made some payments directly to Ms. Allen." Mr. Blackwell has not argued that the visitation notebook would have shown that he made any payments to Ms. Allen before October 2009, that he made *all* of the payments required by court order, or that he made payments to the child support agencies, as ordered.

We also note that the absence of records of any payments made during the period at issue is not due solely to Disciplinary Counsel's delay. Mr. Blackwell admitted during oral argument that he made no record himself of any amounts he paid Ms. Allen. And, as the Board noted, Mr. Blackwell "knew in 2016 that Ms. Allen alleged that he had not made the required child support payments. If the visitation notebook contained information to rebut that allegation, he could have requested that Ms. Allen provide him with the notebook then, before it was lost in 2018." *See Klayman*, 282 A.3d at 592 ("We note that Mr. Klayman was on notice of the disciplinary complaint by 2011, and he therefore could have been expected to

retain any relevant documents until that matter was explicitly resolved."); *Ekekwe-Kauffman*, 210 A.3d at 786 (reasoning that respondent's "claim that the delay caused her to lose access to relevant witnesses and documents is unpersuasive in light of the fact that she was aware of the potential for misconduct charges as early as May 21, 2008, when Disciplinary Counsel wrote to her requesting a written response to" the complaint). Mr. Blackwell argues that the evidence demonstrates that the contentious nature of his relationship with Ms. Allen would have rendered futile any attempt to procure the notebook. If that is true, it underscores the point that, to the extent Mr. Blackwell seeks to argue that he made payments to Ms. Allen, he failed to document those payments himself in a secure manner.

Mr. Blackwell also argues that Disciplinary Counsel failed to comply with its alleged duty under D.C. R. Prof. Conduct 3.8—which applies to a "prosecutor in a criminal case"—to "not [i]ntentionally avoid pursuit of evidence or information because it may damage [its] case" or "[i]ntentionally fail to disclose to the defense, upon request at a time when use by the defense is reasonably feasible, any evidence that the prosecutor knows or reasonably should know tends to negate the guilt of the accused or to mitigate the offense." D.C. R. Prof. Conduct 3.8(d) to (e). Mr. Blackwell states that he requested production of the notebook and that Disciplinary Counsel did not provide it, claiming that it did not know of the notebook's existence.

Even assuming Disciplinary Counsel is subject to Rule 3.8(d),[3] the facts do not support a violation of the Rule here. Mr. Blackwell did not raise the existence of the notebook until after the investigation had been completed, and the Maryland court order requiring use of the notebook said nothing about recording child support payments. Accordingly, Disciplinary Counsel neither knew nor reasonably should have known of the notebook's existence or that it could negate or mitigate Mr. Blackwell's culpability under Rule 3.4(c).

In sum, we conclude that Mr. Blackwell has failed to show that the delay in this case caused him substantial prejudice warranting dismissal or constituted a violation by Disciplinary Counsel of Rule 3.8(d).

## 2. Rule 3.4(c) Violation

D.C. R. Prof. Conduct 3.4(c) provides that a "lawyer shall not . . . [k]nowingly disobey an obligation under the rules of a tribunal except for an open refusal based

---

[3] Bar disciplinary proceedings "are not criminal prosecutions in any sense." *Brookens v. United States*, 182 A.3d 123, 133 n.17 (D.C. 2018); *see In re Williams*, 513 A.2d 793, 796 (D.C. 1986) (per curiam) ("A disciplinary sanction differs from a criminal conviction."); *see also In re Cleaver-Bascombe*, 986 A.2d 1191, 1195 (D.C. 2010) (per curiam) (noting that the purpose of imposing attorney discipline is not to punish).

on an assertion that no valid obligation exists." We have not previously considered whether the Rule applies to an attorney who violates a court rule in his or her personal capacity as opposed to his or her representative capacity. Mr. Blackwell, however, concedes that "Rule 3.4(c) applies to attorneys who are subject to child support orders." Accordingly, we assume for purposes of this matter that the Rule applies.

The question remains whether the Hearing Committee's and Board's findings that Mr. Blackwell failed to comply with a court order regarding child support payments is supported by substantial evidence. Again, we turn to an express concession by Mr. Blackwell: "Respondent admits that he violated Rule 3.4(c) [from] 2007 to 2009 by making child support payments directly to Ms. Allen rather than through the Maryland Office of Child Support Enforcement as required by the Maryland child support order." And, even putting aside Mr. Blackwell's concession, we find substantial evidence in the record to support the Hearing Committee's and Board's findings that, at least from 2007 to 2009 (and, it appears, at least for significant periods of time after 2009), Mr. Blackwell failed to comply with court child support orders.

While conceding that he did not comply with a court order from 2007 to 2009,

Mr. Blackwell maintains that he periodically paid Ms. Allen directly and argues that Disciplinary Counsel therefore did not prove by clear and convincing evidence that he failed to pay substantially what was owed. But Mr. Blackwell's alleged efforts to provide Ms. Allen with money outside of the child support system do not negate his conceded non-compliance with court orders to make his payments through the MOCSE. Moreover, Mr. Blackwell has not pointed to evidence in the record regarding the amounts or dates of payments he made to Ms. Allen, and there is substantial evidence in the record that, even if he had paid Ms. Allen directly, the total of his payments was well below the amount he was required to pay by court order. We accordingly assume based on his concession that Mr. Blackwell violated D.C. R. Prof. Conduct 3.4(c) by knowingly disobeying a court-imposed obligation to pay child support.

### 3. The Rule 8.1(a) Violation

D.C. R. Prof. Conduct 8.1(a) provides that a lawyer shall not knowingly make a false statement of fact in connection with a disciplinary matter. Disciplinary Counsel alleged that Mr. Blackwell violated the Rule when he answered "no" to the question, "You state that you never 'willfully failed to make child support payment pursuant to any court order.' If you have not 'willfully' failed to make court-ordered

child support payments, do you agree that you have failed, however, to make the court ordered support payments." The Board agreed with the Hearing Committee's conclusion that this was a knowing false statement because Mr. Blackwell knew then that he had failed to make a court-ordered child support payment on at least one occasion.

There is substantial evidence in the record that, when Mr. Blackwell answered the question, he knew that he had not made at least some court-ordered child support payments. Mr. Blackwell argues, however, that, because the question was "awkwardly phrased, unclear and ambiguous," his response to it "cannot meet the clear and convincing standard of proof as a matter of law." Mr. Blackwell claims that the Hearing Committee failed to consider his interpretation—that the question was asking whether he had *never* paid child support—and erroneously applied its own interpretation.

We agree with the Board that, while the question is hardly a model of clarity, when read in its entirety and taken in the context of the proceedings and prior exchanges between Mr. Blackwell and Disciplinary Counsel, the most reasonable interpretation is that it was asking whether Mr. Blackwell agreed with the assertion that he had failed to make at least *some* court-ordered child support payments.

To establish a violation of Rule 8.1(a), Disciplinary Counsel was required to prove that Mr. Blackwell *knowingly* made a false statement. Mr. Blackwell contends that "the Committee failed to make factual findings regarding [his] actual state of mind in the existing circumstances at the time he answered the question." The Board agreed with Mr. Blackwell that the Hearing Committee had not made factual findings regarding his mental state when he answered Disciplinary Counsel's question. It nonetheless rejected Mr. Blackwell's argument on the ground, reasserted by Disciplinary Counsel before this court, that intent is an "ultimate fact" that the Board could review de novo—and therefore could make findings about in the first instance.

We need not decide here whether the Board was free to find in the first instance, without any findings of subsidiary fact by the Hearing Committee, whether Mr. Blackwell had possessed the requisite mental state for a Rule 8.1(a) violation. *See In re Krame*, 284 A.3d 745, 755 (D.C. 2022) (even when determining "ultimate facts," such as intent, de novo, both the Board and this court must accept the hearing committee's credibility findings as determinations of subsidiary fact, so long as substantial evidence in the record supports them and they are not infected by any mistake of law); *In re Klayman*, 228 A.3d 713, 717 (D.C. 2020) (per curiam) ("Whether a respondent gave sanctionable false testimony before the Hearing

Committee is a question of ultimate legal fact that the Board and this court review *de novo*.") (brackets omitted). In our view, contrary to that of the Board, the Hearing Committee did make a finding of fact regarding Mr. Blackwell's mental state when he responded to the question at issue. The Hearing Committee found (with emphases added): "Respondent knew [Disciplinary Counsel] was asking about the status of his compliance with court-ordered support payments. But he *dissembled* his response to [Disciplinary Counsel], *despite his prior admission* before the Maryland Court that he had not complied with its order. The Committee concludes [that Disciplinary Counsel] has established by clear and convincing evidence that Respondent *knowingly provided a negative answer* to its question whether he had willfully failed to pay child support as required by the court orders, and thus violated Rule 8.1(a)." "Dissemble" means "to hide under a false appearance" or to "conceal facts, intentions, or feelings under some pretense." *Dissemble*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/dissemble; https://perma.cc/9EDX-T47K (last visited June 21, 2023).[4] A natural reading of the Hearing Committee's

---

[4] "Dissemble" is often used as a synonym of or in tandem with "lie." *See, e.g.*, *In re Silva*, 29 A.3d 924, app. at 948 (D.C. 2011) (respondent's "dishonesty continued throughout the disciplinary process, where he either lied or dissembled, acknowledging the truth only when forced to face it"); *In re Cole*, 967 A.2d 1264, 1267 (D.C. 2009) ("Neglect of a client matter, failure to communicate with a client, dissembling or lying to a client, and causing parties and judicial tribunals to engage in unnecessary work because of one's failures all constitute abhorrent actions."); *In re Scanio*, 919 A.2d 1137, 1143 (D.C. 2007) (citing respondent's "dissembling" in

finding, then, is that Mr. Blackwell "dissembled"—concealed facts under a pretense—after having previously made a contrary admission and therefore knowingly provided a false response. We see no basis in the record to disturb that factual determination, and we are satisfied that it supports a conclusion that Mr. Blackwell violated Rule 8.1(a).

### 4. Sanction

The Board's recommended sanction comes to us with a "strong presumption in favor of its imposition," *In re Hallmark*, 831 A.2d 366, 371 (D.C. 2003), and "[i]f the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed," *In re McClure*, 144 A.3d 570, 572 (D.C. 2016) (per curiam) (internal quotation marks omitted). The ultimate responsibility of imposing sanctions, however, "rests with this court in the first instance." *In re Godette*, 919 A.2d 1157, 1164 (D.C. 2007) (internal quotation marks omitted). In imposing the sanction, we must ensure that we do not "foster a tendency toward inconsistent dispositions for comparable conduct" and that the sanction is not "otherwise . . . unwarranted." D.C. Bar R. XI, § 9(h)(1). "Where this court takes a

concluding that "respondent lied").

significantly different view of the seriousness of an attorney's conduct, the court thus has not hesitated to reach its own conclusion as to the appropriate sanction." *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam).

In imposing professional discipline, we aim "not only to maintain the integrity of the profession and to protect the public and the courts, but also to deter other attorneys from engaging in similar misconduct." *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013) (internal quotation marks omitted). "[T]he purpose of imposing a sanction is not to punish the attorney." *In re Avery*, 189 A.3d 715, 720 (D.C. 2018) (per curiam) (internal quotation marks omitted). When determining the appropriate disciplinary sanction, we evaluate "(1) the seriousness of the conduct, (2) prejudice to the client, (3) whether the conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating circumstances" as non-exhaustive factors. *Martin*, 67 A.3d at 1053 (internal quotation marks omitted).

In arriving at its recommendation, the Board carefully considered Mr. Blackwell's violations in light of the relevant factors that this court has identified. The Hearing Committee also properly considered mitigating factors—that the

underlying conduct did not involve dishonesty, that Mr. Blackwell has no prior disciplinary violations, that Mr. Blackwell acknowledged his Rule 3.4(c) violation, that Mr. Blackwell made some payments directly to Ms. Allen, and that Mr. Blackwell sought to maintain a relationship with D.B. The Board cited those same factors before reducing the Hearing Committee's recommended period of suspension.

We conclude that a six-month suspension with all but 60 days stayed in favor of three years of probation is within the wide range of acceptable outcomes in this case. Mr. Blackwell's violations—disobeying court orders and making a false statement to Disciplinary Counsel—are serious, and in this court Mr. Blackwell continued to argue that he had not obfuscated the truth despite the clear indications to the contrary. The six-month period of suspension and three-year period of probation account for the seriousness of Mr. Blackwell's conduct, while the stay of all but 60 days and the absence of a fitness requirement reflect due consideration of mitigating factors and the purposes of disciplinary sanctions.

To be sure, we have not previously imposed sanctions in these circumstances and have few comparable cases for guidance. "Perfect consistency is not achievable in this area," *In re Silva*, 29 A.3d 924, 927 (D.C. 2011), however, because the

"imposition of sanctions in bar discipline . . . is not an exact science but may depend on the facts and circumstances of each particular proceeding," *In re Goffe*, 641 A.2d 458, 463 (D.C. 1994) (per curiam). Ultimately, we are satisfied that the proposed sanction is comparable to that imposed in analogous cases. *See, e.g.*, *In re Untalan*, 174 A.3d 259, 259-60 (D.C. 2017) (per curiam) (six-month suspension with all but 60 days stayed in favor of one year of probation with conditions where attorney ignored multiple court orders to file a brief in each of seven separate criminal or juvenile appeals in which he had been appointed as counsel); *In re Murdter*, 131 A.3d 355, 356, 358 (D.C. 2016) (per curiam) (six-month suspension with all but 60 days stayed in favor of one year of probation with conditions where attorney failed to file briefs in five separate appeals in which this court had appointed him to represent convicted defendants and failed to respond to numerous court orders in connection with the appeals).

Finally, Mr. Blackwell objects to the recommended conditions of probation, arguing that this court should not require payment of arrears and in particular should not require such payment to VDCSE. More specifically, Mr. Blackwell contends that (a) such a requirement would illegally modify a Maryland court order and offend due-process principles; and (b) the amount of arrears is in dispute and resolution of that dispute may require litigation in court. We do not share Mr.

Blackwell's concerns. The conditions we adopt allow Mr. Blackwell to seek modification of his child support obligations and permit proof of payment either from VDCSE or through other evidence, which could include payment to Maryland.

### III. Conclusion

For the foregoing reasons, Mr. Blackwell is suspended from the practice of law in the District of Columbia for six months, with all but 60 days stayed in favor of three years of probation, subject to the conditions recommended by the Board. For purposes of reinstatement, Mr. Blackwell's suspension will not begin to run until he files an affidavit that fully complies with the requirements of D.C. Bar R. XI, § 14(g).

*So ordered.*